STEPHEN E. WILSON ET AL. *v.* TOWN OF WEST HAVEN ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and PHILLIPS, Js.

Argued June 15—decided July 29, 1955

*Alfonse C. Fasano,* for the appellants (plaintiffs).

*Charles M. Lyman* and *John G. Cicala,* with whom was *John F. Carroll,* for the appellees (defendants).

O'SULLIVAN, J. The plaintiffs are James P. Cannon, Stephen E. Wilson, Gustave L. Misbach and Joseph L. Fox. Prior to October 6, 1954, they were members of the West Haven police department, and on that date their ages were 68, 58, 61 and 55, respectively. Cannon had been a regular member of the department for over forty-nine years. He had served as patrolman until March 1, 1929; as captain until June 7, 1944; as assistant chief until May 6, 1948; and, thereafter, as chief. Wilson and Misbach had been on the force for almost twenty-eight years, and each had attained the rank of captain. Fox had been on the force for over twenty-eight years, had been appointed a sergeant on September 7, 1938, and was still occupying that position on October 6, 1954.

By a special act in 1923, the board of police commissioners of West Haven was to consist of three electors to be appointed by the selectmen. 19 Spec. Laws 23. The special act provided, among other things, that one of the commissioners should serve for one year from October 15, 1923, another for two

years, and the third for three; that annually there-after a commissioner should be appointed for a term of three years; that not more than a majority should belong to the same political party; and that the first selectman should be chairman, ex officio, of the board.

For some twenty years before the election of 1953, the local administration had been under the control of the Republican party. In 1953, however, candidates for the town offices on the Democratic ticket were elected, and they were sworn in on November 9, 1953. In the fall of 1954, the board of police commissioners was composed of two Republicans and one Democrat. Of the two Republicans, one was James A. Walsh, who had served on the board for seventeen years and whose term was to expire on October 15, 1954. Sometime before October 6, Walsh asked Cannon if he had thought about retiring on a pension. When Cannon replied that he had no such intention, Walsh remarked that Cannon would be out anyway when the Democrats became a majority on the board and directed its activities. Walsh also talked with Misbach, pointing out that, due to his length of service, he, Misbach, could be retired at any time. On Wednesday, October 6, 1954, the board held its regular monthly meeting in the town hall. The newly elected first selectman did not attend. The lone Democratic member of the board was seriously ill in a hospital at the time, and he was not consulted concerning the business to come before the meeting. When it was called to order, the commissioners in attendance were Walsh and his Republican colleague. At that meeting the board voted the retirement of each of the plaintiffs, effective two days later. The board then made a number of appointments, including that of Daniel E. Casman,

aged fifty, as a patrolman. It also promoted several policemen then on the force.

None of the plaintiffs had applied for retirement. Each was retired against his wishes. Prior to this occasion, no member of the department had ever been retired involuntarily except for disability or cause. In voting as they did, the Republican commissioners took the position that they had the right to single out, as they chose, any member of the department who had served in that capacity for twenty-five years or more, and could order his retirement for no reason other than that they willed to do so. All of the plaintiffs were officers of ability and experience, and two of them, Wilson and Misbach, had been often commended by the board for outstanding and meritorious conduct. There were no charges preferred or pending against any of them, and no question of disability was involved in their retirement.

Although the plaintiffs advance various claims, their basic contention is that under the authority conferred by special acts of the General Assembly, the board of police commissioners lacked the power to retire them involuntarily, and that if the special acts could be construed to confer such power, they are void so far as they purport to give the board an uncontrolled and unregulated right to retire members of the police department. A discussion of this basic contention will be ample to dispose of the appeal.

In 1913, a board of police commissioners was created for the town of Orange. 16 Spec. Laws 976. After describing the personnel of the board, the manner of selecting its members, and their terms of service, the act required the board to appoint applicants for positions on the police force only

after competitive examinations. Id., §§ 1, 3. It then provided that "[w]henever a person has been appointed a policeman under the provisions of this act, said person shall remain in office until removed for cause, which shall be only such cause as affects his efficiency as a police officer, and shall not be political or religious." Id., § 3. In 1917, a police relief fund, designed to provide a reservoir of funds for the payment of pensions, was established for the town of Orange. 17 Spec. Laws 882. Under the provisions of the act, retirement with a pension was possible for a member of the police department when he had attained the age of sixty and after he had served not less than twenty-five years, and then only in the event that he was found to be totally incapacitated; he was also allowed to retire, regardless of his age and length of service, if, without fault or misconduct on his part, he was rendered totally incapacitated in the regular performance of police duty. Id., § 4.

In 1921, the General Assembly divided the town of Orange and used one of the divisions as the territory of the newly incorporated town of West Haven. 18 Spec. Laws 1067. The latter town was endowed with all the powers, authority and privileges, and was subjected to all the obligations and duties, theretofore granted to and imposed upon the town of Orange. Id., § 1. In 1925, the police relief fund act of 1917 was amended to authorize retirement for partial, as well as total, incapacity. 19 Spec. Laws 832. No particular attention need be given this amendment since it was repealed by the 1937 act to which we refer in the next paragraph and hence does not intimately enter into the problem before us except as it indicated the concern which the legislature was

manifesting toward the men on the police force.

In 1937 the act was again amended. 22 Spec. Laws 645. Both voluntary and involuntary retirement now became possible. The former was available to any member of the department desiring it; the latter was available against any member who, upon examination by three reputable physicians and certification by two of them, was found to be permanently disabled for service. But whether the retirement was voluntary or involuntary, it could not be ordered unless the member in question had served at least twenty-five years on the force and had been contributing to the fund 2 per cent of his annual salary. The final amendment to the act was passed in 1941; 23 Spec. Laws 954; and is quoted in full in the footnote.[1] It is this amendment upon which the board

[1] "[Spec. Acts 1941, No. 368] AN ACT CONCERNING THE POLICE RELIEF FUND OF THE TOWN OF WEST HAVEN. Section four of an act establishing a police relief fund for the town of Orange, approved April 17, 1917, the provisions of which act are made applicable to the town of West Haven by an act dividing the town of Orange and creating the town of West Haven, approved June 24, 1921, as amended by an act approved July 13, 1925, and as further amended by an act approved April 28, 1937, is amended to read as follows: When any officer or regular member of the police department shall have served for a period of twenty-five years or more as a regular member of said department, he may be retired by the board of police commissioners and, when retired, the trustees of the police relief fund shall thereupon pay to such officer or member of the police department, during his natural life, a sum equal to one-half his annual salary at the time of his retirement, in monthly instalments; provided no such officer or member of the police department so retired shall receive less than one thousand dollars per annum; and provided further that each such officer or member of the police department shall have contributed from April 28, 1937, or from the time he shall have become a regular member of said department if after April 28, 1937, to the police relief fund of the town of West Haven an amount equal to two per cent of his annual salary. When any officer or member of the police department of the town of West Haven, including Grade C patrolmen, shall, in the regular performance of police duty and without wilful or wanton misconduct on his

relies as its warrant for retiring the plaintiffs against their wishes.

The board of police commissioners of West Haven is an administrative agency. *Comley ex rel. Brown* v. *Lawlor,* 119 Conn. 155, 161, 174 A. 415. It is a creature of the General Assembly, having neither any inherent nor any common-law power. Whatever functions it may perform are restricted to those which the legislature has expressly or by necessary implication conferred. It can legally act only within the sphere of its authority, and the exercise of its powers is subject to such limitations as are found in the legislative act which brought it into existence or in other acts devoted to the regulation of those powers. The plaintiffs, to be sure, had no vested rights to the positions they held in the police department. *Butler* v. *Pennsylvania,* 51 U.S. (10 How.) 402, 417, 13 L. Ed. 472; *State ex rel. Gordon*

part, have become permanently disabled and physically or mentally unable to perform further police duty, the board of police commissioners shall cause such officer or member of the police department to be examined by three reputable physicians, one to be selected by such officer or member, one to be selected by the board of police commissioners and the third physician to be chosen by the two physicians selected as hereinbefore set forth; and if two of such physicians shall certify, in writing, that such officer or member of the police department so examined is totally incapacitated for further police duty, said board of police commissioners shall place such officer or member on the retired list, and the trustees of the police relief fund shall thereupon pay to such officer or member of the police department, during his life, a sum equal to one-half his annual salary at the time of his retirement, in monthly instalments; provided no such officer or member of the police department so retired shall receive less than one thousand dollars per annum. It is the intention of this act that Grade C patrolmen shall only be retired because of injuries sustained in the regular performance of police duty under the provisions hereinbefore set forth in this act; and the expression 'regular member of the police department' shall only refer to Grade A and Grade B patrolmen; and wherever the word 'supernumerary' is used in this act, or any amendment thereto, it shall mean Grade C patrolmen."

v. *Barthalow,* 150 Ohio St. 499, 507, 83 N.E.2d 393; 3 McQuillin, Municipal Corporations (3d Ed.) p. 421; notes, 4 A.L.R. 205, 172 A.L.R. 1366. On the other hand, the plaintiffs are entitled to insist that their removal from active service on the police force be carried out in a lawful manner.

We are confronted with the necessity of construing a legislative enactment. This type of problem is frequently perplexing and, one might add, it has proved so here. The basic rule of statutory construction is to ascertain the intention of the lawmaking body. *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 A. 25; *Hazzard* v. *Gallucci,* 89 Conn. 196, 198, 93 A. 230. If the enactment is unambiguous, there is no occasion to construe it. *Watrous* v. *Connelly,* 141 Conn. 257, 263, 105 A.2d 654; *Swits* v. *Swits,* 81 Conn. 598, 599, 71 A. 782. It speaks for itself. But where the language used in the act makes uncertain, as it does in the case at bar, just what was in the legislative mind, the court should, among other things, look to the history of the act, the objective it was designed to meet, and the policy underlying it. *State ex rel. McNamara* v. *Civil Service Commission,* 128 Conn. 585, 588, 24 A.2d 846; *Chambers* v. *Lowe,* 117 Conn. 624, 626, 169 A. 912. The circumstances surrounding its enactment may be considered. *Cassidy* v. *Tait,* 140 Conn. 156, 160, 98 A.2d 808; *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 221, 27 A.2d 166. The presumption is that the legislature, in adopting an act, does so in view of existing relevant enactments and with the intention that the act be read with them so as to make one consistent body of law. *State ex rel. Ryan* v. *Bailey,* 133 Conn. 40, 48, 48 A.2d 229. And a truly helpful rule in the search for the legislative intent in this case is that where one construction will sustain the

validity of an act while another will not do so, a court is justified in adopting the former even at the expense of departing from the literal meaning of the words used. *Kuehne* v. *Town Council,* 136 Conn. 452, 456, 72 A.2d 474; *Ferguson* v. *Stamford,* 60 Conn. 432, 447, 22 A. 782.

With these principles in mind, we turn to the amendment of 1941 and particularly to that part which the board counts on to justify its action in retiring the plaintiffs involuntarily. The amendment provides that "[w]hen any officer or regular member of the police department shall have served for a period of twenty-five years or more as a regular member of said department, he may be retired by the board of police commissioners." On its face, this provision obviously empowers the board to retire any regular member of the department who has the required amount of service. But the provision is far from being, as the defendants contend, a grant of power to retire such a person for any reason the board might conjure up or, worse still, for no reason at all. It is clear to us that the General Assembly did not contemplate such a sweeping grant of authority as the defendants' interpretation of the 1941 amendment would bring about.

Nobody questions the right of the General Assembly to provide for the retirement on pension of police officers of the town of West Haven and to delegate to the board of police commissioners authority to carry out the plan. But if the Assembly, without setting a standard to guide and govern the board, gave it the power to retire a member of the department, the attempted delegation of power would be a nullity. *Eastern Oil Refining Co.* v. *Court of Burgesses,* 130 Conn. 606, 611, 36 A.2d 586; *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586;

.2 McQuillin, Municipal Corporations (3d Ed.) p. 25; 1 Sutherland, Statutory Construction (3d Ed.) p. 79, § 314; notes, 12 A.L.R. 1435, 54 A.L.R. 1104, 92 A.L.R. 400. While it is true that the amendment of 1941 provides that retirement shall not be available unless the police officer shall have served twenty-five years as a regular member of the department and shall have contributed, as required, to the relief fund, these conditions do not set up a sufficiently definite standard to guide the board. The situation would be different if the act compelled the board to retire all members of the department who met the conditions just mentioned. *People* v. *Federal Surety Co.*, 336 Ill. 472, 475, 168 N.E. 401; *Commonwealth ex rel. Siani* v. *Wilkes-Barre,* 164 Pa. Super. 529, .532, 67 A.2d 776. If, then, the amendment of 1941 gives the board the right to initiate proceedings itself for the retirement of police officers whose efficiency has not been challenged, we would be compelled to declare it invalid, because of the absence of a proper standard for the board to follow. *State* v. *Van Keegan,* 132 Conn. 33, 36, 42 A.2d 352; see *Ferretti* v. *Jackson,* 88 N.H. 296, 303, 188 A. 474; *Matter of Small* v. *Moss,* 279 N.Y. 288, 299, 18 N.E.2d 281; *State ex rel. Dieckroegger* v. *Conners,* 122 Ohio St. 359, 365, 171 N.E. 586. We will not, however, impute to the General Assembly an intent to pass an invalid act. *State* v. *Muolo,* 119 Conn. .323, 330, 176 A. 401.

Nor will we ascribe to the General Assembly, as we would have to do if the defendants' contention is correct, an intent to enact antagonistic legislation. The 1913 act creating the board provides that everyone thereafter appointed to the police force "shall remain in office until removed for cause, which shall be only such cause as affects his efficiency as a

police officer, and shall not be political or religious." 16 Spec. Laws 976, § 3. Being retired from office is, of course, not the equivalent of being discharged therefrom. There is, however, at least this much in common between the two: in each instance, the former incumbent is no longer in office. In the one case, he has been removed, has lost his job and has been placed on the retired list; in the other, he has been removed and has lost his job. If the board, as it claims, is vested by the amendment of 1941 with an uncontrollable power to retire any police officer for no reason at all or for any reason it selects, the General Assembly has authorized it to do indirectly through retirement what the special act of 1913 forbade it to do directly through discharge. We will not assume that the lawmaking power of the state stultified itself by first affording the police officers of West Haven ample and laudable protection against the evils of preference, whether based on political grounds or on religious grounds, and by thereafter empowering the board to destroy that protection if it so desired.

A final reason for the position we take is found in the practical construction previously placed upon the amendment of 1941 by the board. Such a construction is entitled to some consideration, and if it extends over many years can become "high evidence of what the law is." *Huntington* v. *Birch,* 12 Conn. 142, 149; *Mattoon's Appeal,* 79 Conn. 86, 90, 63 A. 784. While it is true that only fourteen years have elapsed since the amendment of 1941 became effective, it is significant that from the time of its enactment until the plaintiffs were removed from office no member of the department had been retired involuntarily except for disability.

In the light of the interpretative rules to which

reference has previously been made, our construction can be stated in this fashion: The amendment of 1941 consists of three sentences, of which the first two are particularly pertinent to the matter under discussion. The one deals with retirement for service and the other with retirement for disability. Under the first sentence, any officer or regular member of the police department may submit his application for retirement to the board, and if it shall appear that the applicant has served at least twenty-five years as a regular member of the department and has contributed 2 per cent of his annual salary to the police fund from April 28, 1937, or from the time he became a regular member of the department, if after that date, the board must retire him on a pension. Under the second sentence, the board is empowered, on its own initiative, to retire any officer or member of the police department, whether regular or otherwise, who, in the regular performance of police duty and without wilful or wanton misconduct on his part, has become permanently disabled and physically or mentally unable to perform further police duty, and who has been found by two of three appointed physicians to be totally incapacitated for such duty. The two sentences deal with different situations. The first is available for one voluntarily seeking retirement as a contributor to the police fund after twenty-five years of service as a regular member of the force. The board has no authority under this sentence except to act as the agency for ascertaining whether the applicant meets the conditions prescribed for retirement. Upon finding that those conditions have been met, the board is bound to retire the applicant. There is no other course for it to take. The second sentence, however, looks in a differ-

ent direction. It is aimed at retirement for service-connected disability. It authorizes the board to originate, when the member in question fails to do so, proceedings aimed at retiring him, whether he is a regular member or otherwise, regardless of the length of his service or of the fact that he has not contributed to the fund. The conditions which must exist are that the member, while engaged in performing his police duties, has become disabled, through no misconduct of his own, and that two of three physicians, appointed for that purpose, are able to certify that he is totally incapacitated for further police duty.

This construction saves all of the provisions of the amendment, makes unnecessary our declaring any part invalid, and is consistent with the provision, contained in the special act of 1913, protecting police officers in their careers. In retiring the plaintiffs involuntarily when they were not permanently disabled, the board exceeded its authority and acted illegally.

There is error, the judgment is set aside and the matter is remanded with direction to render judgment for the plaintiffs.

In this opinion the other judges concurred.