TOWN OF NEW MILFORD *v.* SCA SERVICES OF CONNECTICUT, INC., ET AL.

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and LONGO, Js.

Argued November 1—decision released December 27, 1977

*John W. Pickard,* with whom, on the brief, were *Joseph F. Keefe* and *William J. Purcell,* for the appellant (plaintiff).

*Jeffrey B. Sienkiewicz,* with whom was *A. Searle Pinney,* for the appellees (defendant towns of Bridgewater et al.).

*John E. Silliman* filed a brief as amicus curiae.

COTTER, J.   The plaintiff seeks to enjoin the defendant SCA Services of Connecticut, Inc., from using its property located in New Milford as a solid waste disposal facility for the disposal of waste material transported from outside the town limits of New Milford. In its amended complaint the plaintiff alleges that solid waste from the defendant towns of Kent, Warren, Bridgewater, Brookfield and Sherman is transported to and disposed of at the New Milford facility. The basis of the plaintiff's request for injunctive relief is the failure of the defendant SCA Services of Connecticut, Inc., and the defendant towns to obtain a permit from the plaintiff to dispose of waste materials originating outside of New Milford at that facility as required by § 7-161 of the General Statutes.[1] The defendant towns of Warren, Bridgewater, Brookfield and Sherman demurred to the plaintiff's com-

---

[1] "[General Statutes] Sec. 7-161. TRANSPORTATION OF GARBAGE. PLANTS FOR TREATMENT. Any town, city or borough having, either by itself or by contract with some competent person, firm or corporation, a method of treatment, by any sanitary process, of its garbage, refuse animal matter, bones, fat or other rejected, unwholesome or waste substances may transport, or, if such treatment is by contract, the contractor therefor may transport, such material to another town or out of the state for the purpose of such treatment. No plant for such treatment shall be established or operated outside of such town, city or borough until application for a permit to establish and operate the same has been filed with a commission composed of the director of health and selectmen of the town in which such plant is

plaint on the grounds that (1) the permit require-
ment of § 7-161 does not apply to facilities already
in existence, and (2) § 7-161 constitutes an uncon-
stitutional delegation of legislative power since this
statute lacks adequate standards for controlling the
action of local officials in granting or denying
the permits required thereunder. The trial court
overruled the first ground of the demurrer of those
towns. From the judgment rendered on the decision
of the court sustaining the second ground of the
demurrer, the plaintiff has appealed. The sole ques-
tion presented concerns the constitutionality of
§ 7-161.

In passing upon the constitutionality of a legis-
lative act, we will make every presumption and
intendment in favor of its validity, and sustain the
enactment unless its unconstitutionality is estab-
lished beyond a reasonable doubt. *Grover* v. *Man-
chester,* 168 Conn. 84, 88, 357 A.2d 922; *Kellems*
v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53, appeal
dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d
678. The trial court concluded that § 7-161 of the
General Statutes constituted an unconstitutional
delegation of legislative power in violation of article
third, § 1, of the Connecticut constitution.[2] The
statute provides in part that a permit must be
obtained from a commission in the particular

to be located and such permit granted by such commission after
notice and hearing as hereinafter provided. Notice of the time, place
and purpose of hearing on any such application shall be served on
each person owning property or residing within one-half mile of
the site of the proposed plant, by leaving a copy of such notice with
or at the usual place of abode of each such person and by publishing
the same in a newspaper published in such town or, if no newspaper
is published therein, in a newspaper having a circulation in such town,
both at least six days before the date of such hearing."

[2] "[Conn. Const. Art. III] Sec. 1. The legislative power of this
state shall be vested in two distinct houses or branches; the one to

locality in order to establish or operate a waste treatment facility which receives waste from other towns. Although § 7-161 requires that the commission afford an applicant notice and a hearing prior to its decision denying or granting such a permit, it fails to delineate applicable criteria to guide the commission in its final determination.

The law-making power is in the legislative branch of our government and cannot constitutionally be delegated; *Len-Lew Realty Co.* v. *Falsey,* 141 Conn. 524, 528, 107 A.2d 403; but the General Assembly may carry out its legislative policies within the police power of the state by delegating to an administrative agency the power to "fill in the details." Ibid.; *H. Duys & Co., Inc.* v. *Tone,* 125 Conn. 300, 312, 5 A.2d 23. "In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform." *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586; *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 120, 355 A.2d 72; *State* v. *Griffiths,* 152 Conn. 48, 57, 203 A.2d 144; 1 Am. Jur. 2d, Administrative Law, § 117. In conferring discretionary power upon the commission, the legislature has not only failed to provide reasonably adequate and definite guidance for the com-

be styled the senate, the other the house of representatives, and both together the general assembly. The style of their laws shall be: Be it enacted by the Senate and House of Representatives in General Assembly convened."

See "[Conn. Const. Art. II] The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

mission to pass upon an application for a statutory permit, but a reading of § 7-161 reveals the total absence of any standards which the local commission is to apply.

The plaintiff argues, however, that the standards missing in § 7-161 are provided for in § 7-162[3] which it claims "was intended by the legislature to supplement and elaborate upon the basic provisions of § 7-161." While it is clear that § 7-162, like § 7-161, relates to the disposal of waste material, § 7-162 applies only after a permit has been granted and relates to the manner and method of transportation of waste material. Nowhere in § 7-162 can we find an intelligible principle for the commission to follow in granting or denying such a permit. Section 7-162 further states that the plant and transportation shall be conducted in accordance with approved sanitary methods, which lends additional support to the conclusion that this section was intended to apply only to waste disposal facilities already in existence once a permit has been granted. Thus, we do not construe § 7-162 as applying to the initial issuance of a permit so as to cure the constitutional infirmity inherent in § 7-161.

Although the General Assembly has enacted a rather comprehensive state-wide solid waste man-

---

[3] "[General Statutes] Sec. 7-162. METHOD OF TRANSPORTATION. APPEAL. The transportation of such material shall be in watertight, closely-covered receptacles, and such plant and transportation shall be conducted in all respects in accordance with approved sanitary methods, subject, as to the operation of such plant and the time and place of loading and unloading such material, to the orders of the health authorities of the town, city or borough in which such plant is located or such material is loaded or unloaded. Any person or corporation aggrieved by any such order of a town, city or borough health authority may appeal as provided in section 19-103. Any appeal herein provided for shall act as a stay of execution of the order appealed from."

agement program, to be administered by the commissioner of environmental protection,[4] it has nevertheless allowed localities to make additional provisions and otherwise further control the disposal of solid waste located within their boundaries.[5] Any such delegation of legislative power by the General Assembly, however, is subject to constitutional restrictions. *State* v. *Stoddard,* supra, 627; *State* v. *Conlon,* 65 Conn. 478, 484, 33 A. 519. Where a statute, such as § 7-161, vests public officials with the discretion to grant, refuse or revoke a license to carry on an ordinarily lawful business, and does not set an express standard to guide and govern the exercise of this discretion, the attempted delegation of power is a nullity. *Wilson* v. *West Haven,* 142 Conn. 646, 655, 116 A.2d 420; *Eastern Oil Refining Co.* v. *Court of Burgesses,* 130 Conn. 606, 611, 36 A.2d 586; *State* v. *Darazzo,* 97 Conn. 728, 732, 118 A. 81; annot., 54 A.L.R. 1104.

There is no error.

In this opinion the other judges concurred.

[4] General Statutes §§ 19-524a–19-524nn.
[5] See General Statutes § 19-524n.