UNIVERSITY OF CONNECTICUT CHAPTER, AAUP, ET
AL.
*v.* GOVERNOR ET AL.
(12384)

SHEA, DANNEHY, SANTANIELLO, CALLAHAN and BARRY, Js.

Argued March 5—decision released July 8, 1986

*Joel M. Ellis,* with whom was *William S. Zeman,* for the appellants (plaintiffs).

*Daniel R. Schaefer,* assistant attorney general, with whom were *David M. Teed,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Barney Lapp,* assistant attorney general, for the appellees (defendants).

CALLAHAN, J. The principal issue on this appeal is the constitutionality of General Statutes § 4-85 (b)[1] which permits the governor to reduce budgetary allotments by up to 5 percent under certain specified circumstances. The plaintiff unions, claiming that § 4-85 (b) is unconstitutional, originally filed this action in the Superior Court on February 27, 1980, to enjoin the governor from making such reductions. The trial court, *Satter, J.,* rejected the plaintiffs' arguments, found § 4-85 (b) constitutional, and rendered judgment for the defendants. On appeal the plaintiffs argue that General Statutes § 4-85 (b) is unconstitutional: (1) because it has the effect of permitting the governor to veto part of an appropriation; (2) because it confers upon the governor legislative power in violation of the separation of powers provision contained in article second of the Connecticut constitution; and (3) because, even if such power can be delegated, the

[1] General Statutes § 4-85 (b) provides: "The governor shall approve such requisitions for allotments unless the governor determines that (1) due to a change in circumstances since the budget was adopted certain reductions should be made in various allotments of appropriations or (2) the estimated budget resources during such fiscal year will be insufficient to pay all appropriations in full, in which event the governor may modify such allotments to the extent the governor deems necessary, provided no reduction in the budget adopted by the general assembly, by any requisition for an allotment made pursuant to subsection (a) or modification by the governor or both, shall result in any reduction in any fund of more than three per cent or in any appropriated account of more than five percent of the amount appropriated for such fiscal year except such restriction shall not apply in time of war, invasion or emergency caused by natural disaster."

statute does not satisfy the requirements for a valid delegation under the rule enunciated in *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586 (1940). We find no error.

I

The defendants, in accordance with Practice Book § 3012, have presented two alternate grounds for affirming the judgment, the defenses of sovereign immunity and lack of standing. Both defenses were raised below, considered and rejected by the trial court.

It is well settled in Connecticut that the state cannot be sued without its consent and that since the state acts only through its officers and agents, a suit against an officer concerning a matter in which he represents the state is, in effect, a suit against the state. *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981); *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977). Where, however, the defendant officer is alleged to be acting under an unconstitutional statute, the interest in the protection of the plaintiffs' rights to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. *Horton* v. *Meskill,* supra, 624. The exception in *Horton* was limited to actions requesting declaratory relief. Id. In *Sentner,* however, we recognized a narrow exception for actions seeking prospective injunctive relief when the relief granted avoids undue interference with governmental functions. *Sentner* v. *Board of Trustees,* supra, 344–45. We agree with the finding of the trial court that this case presented a significant and substantial question, the determination of which is manifestly in the public interest and thus is not barred by the doctrine of sovereign immunity. See *Horton* v. *Meskill,* supra, 628.

The defendants next claim that the plaintiffs lacked standing to bring this action because the plaintiff unions

proved no injury as a result of the governor's action. The trial court, *Corrigan, J.*, denied the defendants' motion to dismiss for lack of standing. It found that the plaintiffs had a colorable claim of direct injury and that the allegations of their amended complaint sufficiently stated an "adversary presentation of the issues to withstand the motion to dismiss." After the completion of the trial, the court, *Satter, J.*, issued its decision in which it stated in a footnote that it was adopting Judge Corrigan's opinion concerning standing.

As we recently stated in *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* 199 Conn. 609, 612–13, 508 A.2d 743 (1986). " 'The "fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated." *Flast* v. *Cohen,* 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 [1968].' *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 485, 338 A.2d 497 (1973). 'Standing is not a technical rule intended to keep aggrieved parties out of court . . . . Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., *Baker* v. *Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Stern* v. *Stern,* 165 Conn. 190, 192, 332 A.2d 78 (1973).' . . . The requirements of justiciability and controversy are 'ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity.' " *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* supra, quoting *Maloney* v. *Pac,* 183 Conn. 313, 320–21, 439 A.2d 349 (1981).

We have reviewed the record and conclude that the trial court was correct in finding that the plaintiffs had standing to bring this action.

## II

The plaintiffs first claim that General Statutes § 4-85 (b) is unconstitutional because it allows the governor to veto a part of an appropriation. "It is well settled that a party who challenges a statute on constitutional grounds has no easy burden, for every intendment will be made in favor of constitutionality, and invalidity must be established beyond a reasonable doubt." *State* v. *Darden,* 171 Conn. 677, 679, 372 A.2d 99 (1976); *State* v. *Dupree,* 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985); *Eielson* v. *Parker,* 179 Conn. 552, 560, 427 A.2d 814 (1980); *State* v. *Clemente,* 166 Conn. 501, 506, 353 A.2d 723 (1974). It is with this in mind that we examine the plaintiffs' claims.

General Statutes § 4-85 (a) requires each budgeted agency to submit to the governor, through the secretary of the office of policy and management, a requisition for the allotment of the amount necessary to carry on the work of the agency during each quarter of the fiscal year. General Statutes § 4-85 (b), the challenged statute, provides: "The governor shall approve . . . requisitions for allotments unless . . . [he] determines that (1) due to a change in circumstances since the budget was adopted certain reductions should be made in various allotments . . . or (2) the estimated budget resources during such fiscal year will be insufficient to pay all appropriations in full, in which event the governor may modify such allotments to the extent . . . necessary, provided no reduction in the budget adopted by the general assembly, by any requisition for an allotment made pursuant to subsection (a) or modification by the governor or both, shall result in any reduction

in any fund of more than three per cent or in any appropriated account of more than five per cent of the amount appropriated for such fiscal year . . . . ''

In the fiscal years 1979-1980, 1980-1981, and 1981-1982, the governor reduced quarterly allotments to the University of Connecticut and to the Connecticut state universities, resulting in their receiving less than the full amounts appropriated to them in each of those fiscal years. The governor reduced the allotments due to anticipated decreases in state revenues and increases in state expenses, which were likely to cause a budgetary deficit. The plaintiffs argue that although the governor's authority under the statute is not, in form, a veto under article fourth, § 15, of the Connecticut constitution, the substance and effect of the governor's action is a veto. They contend that § 4-85 (b) authorizes the governor to do indirectly that which the constitution directly prohibits. We disagree.

"Article fourth, § 15, of the constitution of Connecticut confers on the governor the power to veto any bill passed by both houses of the General Assembly but confers no power to veto any bill except as an entirety." *Caldwell v. Meskill,* 164 Conn. 299, 305, 320 A.2d 788 (1973). The only power of "partial veto" is that conferred by the provisions of § 16 of article fourth. See *Bengzon v. Secretary of Justice,* 299 U.S. 410, 414, 57 S. Ct. 252, 81 L. Ed. 312 (1936). Section 16 permits the governor to disapprove any item or items of any bill making appropriations of money embracing distinct items, while at the same time approving the remainder of the bill, and the part or parts of the bill so approved shall become effective but the item or items of appropriation disapproved shall not take effect unless the same are separately reconsidered and repassed in accordance with the rules and limitations prescribed for the passage of bills over the executive veto. *Caldwell*

v. *Meskill,* supra, 305; see *Patterson* v. *Dempsey,* 152 Conn. 431, 207 A.2d 739 (1965).[2]

The plaintiffs argue that General Statutes § 4-85 (b) permits the governor to *reduce* appropriations which in effect constitutes a veto of *part* of an appropriations bill, rather than a distinct *item* of appropriation. This court has held that the terms "item or items" and "part or parts" as used in § 16 of the constitution do not have the same meaning. *Patterson* v. *Dempsey,* supra, 440. Under § 16, the governor may only veto distinct "items" of an appropriation, which are indivisible sums of money dedicated to a stated purpose. The governor may not veto any other "parts" of an appropriations bill. Id., 448. The authority given the governor under § 4-85 (b), however, does not allow the governor to *reduce* either an "item" or a "part" of an *appropriation.* Rather, it permits the reduction of an *allotment.* This distinction is one which is not made in the Oklahoma decisions cited and relied on by the plaintiffs. See *State ex rel. Crable* v. *Carter,* 187 Okla. 421, 103 P.2d 518 (1940); *State ex rel. Hudson* v. *Carter,* 167 Okla. 32, 27 P.2d 617 (1933).

An appropriation is a statute passed by the legislature to authorize expenditures, while an allotment is the action by which the executive branch sets aside funds sufficient to cover a portion of the expenditure authorized by the appropriations act. See General Statutes § 4-69 (3) and (4). We conclude that a reduction of expenditures does not constitute a veto, or even have the effect of a veto. As the trial court indicated, the term "veto" is commonly understood as the *refusal of assent* by the executive officer whose assent is necessary to perfect a law which has been passed by the legis-

[2] We note that *Patterson* v. *Dempsey,* 152 Conn. 431, 435–37, 207 A.2d 739 (1965), was decided before the Connecticut constitution of 1965 was adopted. *Patterson* cites to article fourth, § 15, of the 1955 constitution. The subject matter of this section is now covered in article fourth, § 16, in the 1965 constitution.

lative body. Black's Law Dictionary (5th Ed.). The power of partial veto, as contemplated by article fourth, § 16, has been construed as the power to disapprove, a negative power, or a power to delete or destroy a part or item, and is not a positive power, or a power to *alter,* enlarge or increase the effect of the remaining parts or items. *State ex rel. Sego* v. *Kirkpatrick,* 86 N.M. 359, 365, 524 P.2d 975 (1974).

Under § 4-85 (b), the governor's authority does not fall within either of these definitions of the veto power. A reduction of an allotment is not a refusal to assent to an appropriations bill. Neither does the reduction delete or destroy the validity, legality, or effectiveness of the underlying appropriations act which authorized the expenditure, or indicate a disapproval of the appropriations act. In fact, the entire appropriations act remains effective and the expenditure can later be restored, as it was in this case. A partial veto is unconstitutional because it distorts or frustrates the intent of the legislature or enables the executive to legislate affirmatively. *Bengzon* v. *Secretary of Justice,* supra, 414; *Washington Assn. of Apartment Assns.,* 88 Wash. 2d 563, 565–66, 564 P.2d 788 (1977). Here, the power to reduce expenditures within specified limits simply implements the intent of the legislature as manifested by § 4-85 (b). Thus, we conclude that § 4-85 (b) does not unconstitutionally confer veto power on the governor in circumvention of article fourth, § 15, of the Connecticut constitution.

### III

The plaintiffs next argue that General Statutes § 4-85 (b) is invalid because it confers upon the governor a strictly legislative power in violation of the separation of powers doctrine expressed in article second of the Connecticut constitution. We disagree.

"The Constitution of this state provides for the separation of the governmental functions into three basic departments, legislative, executive and judicial, and it is inherent in this separation, since the law-making function is vested exclusively in the legislative department, that the Legislature cannot delegate the law-making power to any other department or agency. In the establishment of three distinct departments of government the Constitution, by necessary implication, prescribes those limitations and imposes those duties which are essential to the independence of each and to the performance by each of the powers of which it is made the depository." *State* v. *Stoddard,* supra, 627.

We have held, however, that the separation of powers doctrine cannot always be rigidly applied. *State* v. *Darden,* supra, 679; *Adams* v. *Rubinow,* 157 Conn. 150, 155, 251 A.2d 49 (1968). In *State* v. *Clemente,* supra, 510, we held that there are activities in which more than one branch of government may participate. "Executive, legislative, and judicial powers, of necessity overlap each other, and cover many acts which are in their nature common to more than one department. These great functions of government are committed to the different magistracies in all their fullness, and involve many incidental powers necessary to their execution, even though such incidental powers in their intrinsic character belong more naturally to a different department." Id., citing *In re Application of Clark,* 65 Conn. 17, 38, 31 A. 522 (1894).

As the trial court indicated, the relevant standard for testing the constitutionality of such a statute is stated in *State* v. *Darden,* supra, 679. A statute will be declared unconstitutional if it (1) confers on one branch of government the duties which belong exclusively to another branch; see *State* v. *Clemente,* supra; or (2) if it confers the duties of one branch of government on another branch which duties significantly inter-

fere with the orderly performance of the latter's essential functions. See *Adams* v. *Rubinow,* supra. We find, however, that neither situation is present here.

The legislative power necessarily encompasses the "power to appropriate funds to finance the operation of the state and its programs." *Eielson* v. *Parker,* supra, 560, citing *Bridgeport* v. *Agostinelli,* 163 Conn. 537, 544, 316 A.2d 371 (1972); Conn. Const., art. IV § 22. The governor is vested with the supreme executive power of the state. Conn. Const., art. IV § 5. The governor is also specifically authorized by article fourth, § 12, of the Connecticut constitution to see that the laws are faithfully executed, but the remainder of the governor's authority must be found in other constitutional provisions and in the statutes. Conn. Const., art. IV § 12; *Bridgeport* v. *Agostinelli,* supra, 547.

The budgetary process in Connecticut as set forth in General Statutes, c. 50, part II, involves both the legislative and executive branches. See General Statutes §§ 4-69 through 4-100. The trial court in its memorandum of decision tracked the process of preparing a budget. In summary form, the trial court stated that this process is set in motion when heads of budgeted agencies, pursuant to General Statutes § 4-77, "submit estimates of expenditures required for the next fiscal year, and estimates of revenues for the current and next fiscal year, to the secretary of the office of policy and management and, through the legislative office of fiscal analysis, to the legislative appropriation and finance committees . . . having cognizance of matters related to state agencies." Pursuant to § 4-79, the secretary of the office of policy and management prepares a tentative budget for the governor. The governor then submits a budget document pursuant to § 4-71 setting forth his financial programs for the ensuing fiscal year. See also General Statutes §§ 4-72, 4-73, 4-74, 4-76. The legislature then adopts an act making appropriations for state

expenses for that fiscal year. This act appropriates precise dollar amounts to each budgeted agency. As mentioned earlier in our decision, the governor has the power to veto the entire appropriation bill; Conn. Const., art. IV § 15; or any line item of the bill. Conn. Const., art. IV § 16.

In *Bridgeport* v. *Agostinelli,* supra, 537, we stated that chapter 50 and General Statutes § 4-85 (b) were enacted to give the governor the power to supervise the execution of the budget. See Report of the Connecticut Commission Concerning the Reorganization of the State Departments (1935) p. 154. "Prior to 1937 a state agency's ability to spend was limited only by the amount and purpose of the appropriations made. The full amount of the appropriation was reserved for the use of the agency in blanket fashion." *Bridgeport* v. *Agostinelli,* supra, 548. The commission, in its report, stressed the need for a systematic procedure for controlling the rates or the timeliness of expenditures. It proposed "a plan through which appropriations would be made available to the state agencies under a system of quarterly allotments to be administered by the governor. He was to control the timeliness and the amounts of the allotments depending on the state of the revenues received. The allotments so made would establish the maximum amount to which an appropriation could be encumbered. These recommendations provided the basis for what is now part of chapter 50 of the General Statutes." Id., 548–49.

An examination of this statutory scheme reveals that General Statutes § 4-85 (b) does not delegate a strictly legislative function. In particular, it does not delegate the legislative authority to appropriate, as the plaintiffs argue. Rather, it delegates to the governor the power over making expenditures by allowing him to reduce quarterly allotments under certain well defined circumstances. See *Opinion of the Justices,* 375 Mass.

827, 376 N.E.2d 1217 (1978). This difference between appropriations and allotments was discussed in part II of our decision. See General Statutes § 4-69 (3) and (4). As the trial court recognized, the executive branch is most capable of having detailed and contemporaneous knowledge regarding finances. Under the constitutional separation of powers, the governor uses that knowledge in making such spending decisions and to see that the laws are faithfully executed. See Conn. Const., art. IV § 12; *Opinion of the Justices,* supra, 834. We find that General Statutes § 4-85 (b) does not confer legislative power upon the governor in violation of the separation of powers doctrine contained in article second of our constitution.

## V

The plaintiff next argues that, if we assume the General Assembly had the power to enact General Statutes § 4-85 (b), the statute does not set forth sufficient standards to circumscribe the governor's execution of delegable powers appropriately. We disagree.

In passing on the constitutionality of the standards as set forth in General Statutes § 4-85 (b), we will make every presumption and intendment in favor of their validity, and sustain the enactment unless its unconstitutionality is established beyond a reasonable doubt. See *New Milford* v. *SCA Services of Connecticut, Inc.,* 174 Conn. 146, 148, 384 A.2d 337 (1977). In order to render admissible a delegation of legislative power, it is necessary "that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform." Id., 149, citing *State* v. *Stoddard,* supra, 628; *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 120, 355 A.2d 72 (1974); *State* v. *Griffiths,* 152 Conn. 48,

57, 203 A.2d 144 (1964); 1 Am. Jur. 2d, Administrative Law § 117. This court noted in *State* v. *Stoddard,* supra, 628, however, that any standard must provide only "such degree of certainty as the case permits. . . . " See *Wilson* v. *Connecticut Product Development Corporation,* supra.

Under General Statutes § 4-85 (b), the governor may exercise his delegated power if (1) due to a change in circumstances since the budget was adopted certain reductions should be made in various allotments of appropriations, or (2) the estimated budget resources during such fiscal year will be insufficient to pay all appropriations in full, "in which event the governor may modify such allotments to the extent the governor deems necessary . . . . " The provision limits the reduction to no more than 3 percent in any fund or 5 percent in any appropriated account.

The plaintiffs argue that the standards of "deems necessary" and "a change of circumstances" in subdivision (1) permit the governor to make a reduction in an appropriation in his unrestrained discretion. We disagree. The governor's authority under subdivision (1) is limited to a change of circumstances since the budget was adopted, as well as the 3 percent reduction limit on any fund and the 5 percent reduction limit on any appropriated account. We agree with the trial court that these standards are constitutionally sufficient under our law in that they are "as definit[e] as is reasonably practicable under the circumstances." *Wilson* v. *Connecticut Product Development Corporation,* supra. As we stated in *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* 160 Conn. 109, 115, 273 A.2d 880 (1970), "the legislative process would frequently bog down if the General Assembly 'were constitutionally required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied . . . . ' " The duty to supervise the execution of the

budget has been vested in the executive branch by our legislature. General Statutes § 4-69 et seq.; see Report of the Connecticut Commission Concerning the Reorganization of the State Departments (1935); *Opinion of the Justices,* supra, 835–37. To require any more specificity in the standards as set forth in subdivision (1) would hamper the flexibility needed for the governor to monitor and administer expenditures and to supervise the execution of the budget.

The plaintiffs argue that the defect in subdivision (2) is that a shortfall in "estimated budget resources" only triggers the governor's ability to exercise a reduction power; it does not provide him with a standard for applying that power. Again they argue that the language "deems necessary" does not specifically clarify the limits of the power delegated. We find the standards in subdivision (2) constitutionally sufficient for the same reasons we found subdivision (1) to be "as definit[e] as is reasonably practicable under the circumstances." *Wilson* v. *Connecticut Product Development Corporation,* supra; see *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 679, 236 A.2d 917 (1967).

Further, it is claimed that the trial court improperly inserted language from General Statutes § 4-85 (c) into General Statutes § 4-85 (b) when it described General Statutes § 4-85 (b) as limiting the governor's reduction power to that of "avoiding a deficit" or to "prevent a deficit." We do not find that the trial court erred in looking to General Statutes § 4-85 (c) in interpreting § 4-85 (b). "A court must interpret a statute as written; *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980); and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. *Peck* v. *Jacquemin,* 196 Conn. 53, 63, 491 A.2d 1043 (1985)." *Orticelli* v. *Powers,* 197 Conn. 9, 13–14, 495

A.2d 1023 (1985). Moreover, "where a statute reasonably admits of two constructions, one valid and the other invalid on the ground of unconstitutionality, courts should adopt the construction which will uphold the statute even though that construction may not be the most obvious one." *Adams* v. *Rubinow,* supra, 153.

We find no error.

In this opinion the other justices concurred.

