[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Katherine Maxwell, Controller, Town of Windham, and the Town of Windham, appeal from a final decision of the defendant, the Freedom of Information Commission ("FOIC"), ordering the plaintiffs to disclose to the defendant, Steven Edelman, the legal fee bills of an attorney, Richard S. Cody, employed by the town. This appeal is brought pursuant to General Statutes §§ 1-206(d) of the Freedom of Information Act ("FOIA") and § 4-183 of the Uniform Administrative Procedure Act ("UAPA"). For the reasons articulated herein the court finds in favor of the defendants.
By a letter dated October 9, 1998, Edelman requested from the plaintiffs "all legal bills, receipts, itemized statements and similar instruments since 1994" (Return of Record ("ROR"), p. 7). The town employs the services of three groups of attorneys. Cody is employed by the town to perform a variety of legal services pertaining to land use and environmental issues (ROR, p. 46 et seq.).
Through letters dated October 19, 1998 and October 27, 1998, Maxwell informed Edelman that records from the town's labor counsel and the town attorney were available for inspection (ROR, pp. 8-9). She wrote that, "Town Counsel, Richard Cody, has advised legal invoices involving pending litigation are exempt and cannot be released at this time." Id.
When Edelman was denied access to the requested documents, he filed a written complaint with the FOIC dated November 4, 1998 (ROR, p. 1). A hearing on the matter was held before the FOIC on January 13, 1999 (ROR, p. 29 et seq.). At the hearing the plaintiffs objected to the disclosures on the basis of attorney-client privilege and a privilege for records pertaining to strategy with respect to pending litigation.[1] The FOIC concluded that the plaintiffs had not met their burden to prove the claimed exemptions and ordered the disclosure of Cody's billing invoices (ROR, p. 87 et seq.). This appeal followed.[2]
 I. Standard of Review "We begin by articulating the applicable standard of review in an appeal from the decision of an administrative agency. Judicial review of [an administrative agency's] action is governed by the [UAPA] . . . and the scope of that review is very restricted. . . .With regard to questions of fact, it CT Page 2661 is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency."
(Internal quotation marks and citation omitted) Cadlerock PropertiesJoint Venture L.P. v. Commissioner of Environmental Protection,253 Conn. 661, 668 (2000).
 "Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. Ordinarily this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . .[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . .Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.
(Internal quotations and citations omitted.) Bezzini v. Dept. of SocialServices 432, 436 (1998).
 "[Where] the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. . . ."
(Citations omitted.) United Parcel Service, Inc. v. Administrator,209 Conn. 381, 385-386 (1998).
In applying FOIA, this court is mindful that, "The Freedom of Information Act expresses a strong legislative policy in favor of the open conduct of government and free public access to government records."Wilson v. Freedom of Information Commission, 181 Conn. 324, 328 (1980). "[T]he general rule under the Freedom of Information Act is disclosure with the exceptions to this rule being narrowly construed. The burden of establishing the applicability of an exemption clearly rests upon the CT Page 2662 party claiming the exemption." New Haven v. Freedom of InformationCommission, 205 Conn. 767, 775 (1988); Superintendent v. Freedom ofInformation Commission, 222 Conn. 621, 626 (1992); Rose v. Freedom ofInformation Commission, 221 Conn. 217, 232 (1992); Perkins v. Freedom ofInformation Commission, 228 Conn. 158, 167 (1993).
In this appeal the plaintiffs raised a number of issues. First, they claim that the decision of the FOIC was overruled by the legislature through the passage of Public Acts 1999, No. 99-179, now codified as General Statutes § 52-146r.[3] Second, the plaintiffs claim the records are exempt from disclosure under General Statutes § 1-210 (b) (4) "[r]ecords pertaining to strategy and negotiations with respect to pending claims or pending litigation." Third, the plaintiffs claim the records are exempt pursuant to General Statutes § 1-210(b)(10) "communications privileged by the attorney-client relationship." Fourth, the plaintiffs contend the delegation to the FOIC of the authority to determine what constitutes an attorney-client communication is unconstitutional as it violates principles of separation of governmental powers. The FOIC contests the plaintiffs' claims of error and argues that the appeal should be dismissed.
II. Plaintiffs' Claims of Error
 A. The Claim that General Statutes § 52-146r Overrules the FOIC Decision
The plaintiff maintains that "[t]his statute . . . directly overrules the Commission's decision that the records were not `privileged.' It refers specifically to the Act, which provides in Section 1-210(b)(10) that records "privileged by the attorney-client relationship' are exempt from disclosure. Thus, the subject records, which `are in furtherance of the rendition of such legal advice,' are now exempt from disclosure." (Plaintiff's Brief, pp. 5-6). This court does not find the plaintiff's position persuasive.
The FOIC rendered its final decision through a notice of final decision dated May 5, 1999 (ROR, p. 86 et seq.). The effective date of General Statute § 52-146r is October 1, 1999. The language of the statute lacks any indication that it was intended to overrule prior final decisions of the FOIC. The plaintiffs have not brought to the court's attention any portion of the General Statute's legislative history to support their position. "Newly enacted statutes are generally given only prospective effect unless there is clear evidence that the legislature intended to give the statute retroactive effect." State v. Vilalastra,207 Conn. 35, 40 (1988); See also, General Accident Insurance Company v.Powers, Bolles, Houlihan Hartline, Inc., 50 Conn. App. 701, 714
CT Page 2663 (1998), aff'd 251 Conn. 56 (1999).
Second, implicit in the plaintiffs' argument is the assumption that the General Statute affected a change in the law as opposed to a codification of an existing legal principle. Once again, however, the plaintiff has failed to provide legal authority for this proposition. At the time of the FOIC decision General Statutes § 1-210(b)(10) provided that attorney-client communications were exempt from disclosure. In June of 1998 our Supreme Court in Shew v. Freedom of Information Commission,245 Conn. 149, 158 (1998) recognized that the attorney-client privilege protects communications in circumstances where the client is a municipality.[4] The Court articulated the test to be utilized in a particular case to determine whether the privilege applied.
 Accordingly, we conclude that communications to an attorney for a public agency are protected from disclosure by privilege if the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence.
(Internal quotation marks and footnotes omitted). Id. at 159.
This test is consistent with the statutory language of General Statutes § 52-146r. "Connecticut has a long-standing, strong public policy of protecting attorney-client communications. This privilege was designed, in large part, to encourage full disclosure by a client to his or her attorney so as to facilitate effective legal representation."Metropolitan Life Ins. Co. v. Aetna Casualty Surety Co., 249 Conn. 36,48 (1999).
The House of Representatives debate on the statute supports the conclusion that the intent was to codify the existing law. Representative Paul Doyle, speaking in support of the bill, stated in relevant part:
 What this bill does is it clarifies, recently the Connecticut Supreme Court determined that clearly a municipality and a lawyer have attorney-client privilege agreement too.[5] But the trouble is that does not clarify whether or not state officials and their attorneys have an attorney-client privilege. The overall attorney client privilege is basically a CT Page 2664 common law right. And this just clarifies that there is a statutory attorney-client privilege between a state official and employee.
42 H.R. Proc., Pt. 10, 1999 Sess., p. 3609-3610
The court finds that the plaintiff has not demonstrated that General Statute § 52-146r, which codifies the "long-standing, strong public policy" of the state of Connecticut was intended to overrule the decision of the FOIC in the present matter. Thus, the plaintiffs' first claim of error is rejected.
 B. The Claim that the Records are Exempted from Disclosure Pursuant to General Statutes §§ 1-210(b)(4) and 1-210(b)(10)
General Statutes § 1-210(b) provides "[n]othing in the Freedom of Information Act shall be construed to require disclosure of:. . . .(4) [r]ecords pertaining to strategy . . . with respect to pending claims or pending litigation. . . .(10) . . . communications privileged by the attorney-client relationship."
An analysis of the issue presented must begin by stating the public policy consideration which form the basis of the FOIA.
 The overarching legislative policy of the [act] is one that favors the open conduct of government and free public access to government records . . . The sponsors of the [act] understood the legislation to express the people's sovereignty over the agencies which serve them . . . and this court consistently has interpreted that expression to require diligent protection of the public's right of access to agency proceedings. Our construction of the [act] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed. Our courts, however, have not hesitated to apply an exemption to disclosure where the party seeking the exemption has met the burden of establishing that it applies.
(Internal quotation marks and citations omitted). Stamford v. Freedom ofInformation Commission, 241 Conn. 310, 314 (1997).
Thus, the burden rests upon the party claiming an FOIA exemption to prove it. "This burden requires the claimant of the exemption to provide more than conclusory language, generalized allegations or mere arguments of counsel. Rather, a sufficiently detailed record must reflect the CT Page 2665 reasons why an exemption applies to the materials requested." New Havenv. Freedom of Information Commission, supra, 205 Conn. 775-776; see alsoStamford v. Freedom of Information Commission, supra, 241 Conn. 316 et seq.
An examination of the record in this case reveals that the documents at issue are Cody's billing invoices for legal services rendered to the town. At the time of the FOIC hearing in 1998, the invoices pertained to pending matters. However, in January 2001, when the appeal was argued to the court, Cody was unclear whether all of the matters remained pending. At the January 13, 1999 FOIC hearing, Cody testified at length about the documents and his billing practices. As previously indicated, Edelman sought disclosure of records from 1994 to October 1998 (ROR, p. 7). Cody indicated during the course of his testimony that he estimated the quantity of materials Edelman requested to be "probably more than, maybe 1,000 pages perhaps more between `94 and `98 — maybe a little exaggerated but it's a significant pile. The amount of entries would be numerous. One bill, for example, might contain 30, 40 entries depending on how much the case has been worked on." (ROR, p. 53). These documents were not submitted to the FOIC for an in camera inspection. Rather, in the effort to prove their exemption, the plaintiffs chose to introduce only, what Cody described as, "random copies of some pages of billing sheets" (ROR, p. 49). These random samples consist of only nine pages of billing invoices (ROR, 19-27).
Cody indicated that when Edelman initially requested the documents an effort was made by himself and others to purge the billing invoices of any individual objectionable entries. The redacted documents were then going to be made available to Edelman (ROR, p. 48-49). This process was undertaken because as Cody indicated ". . . my billing sheets are on some occasions, not all but most, detailed and provide certain information about what I had done and with whom I had spoken. The bills will always name an adversary as a billing invoice matter. They would contain my daily entries of what I write down to the point of — and this isn't in the course of every instance, but to the point of what I might be researching or my associates or law clerks might be researching with respect to pending litigation or in respect to questions about which I had been asked" (ROR, p. 47-48). The process was, however, abruptly terminated. Cody indicated that "the amount of work we started to do for Mr. Edelman we stopped as soon as he brought his [FOIC] appeal" (ROR, p. 48).
Briefly stated a review by the court of the nine pages of invoices in evidence supports Cody's description of the variance in detail of what he, as previously noted, estimated to be approximately 30 to 40 thousand individual entries. This can be illustrated through the following CT Page 2666 examples: "FOR SERVICES RENDERED: — Edelman (FOI IV) . . . 01/14/96 Draft respondent's brief .8" (ROR, p. 20) as compared to "FOR SERVICES RENDERED — Land Use (Misc.) . . . Review Frisbee golf conditions; telephone conference with client .3" (ROR, p. 27). In addition, the invoices contain even more general information such as Cody's letterhead, total hours billed, charge per hour, and total amount due. (ROR, p. 19-27).
The FOIC in their appeal acknowledge that "it is possible that individual specified notations in some billing invoices might disclose . . ." exempt information (Defendant's Brief, p. 17). But in this case, the plaintiffs take the position that all of the approximately one thousand billing invoices which contain many more thousand specific individual entries are exempt from disclosure. The plaintiffs claim that they have met their burden to prove the claimed FOIA exemptions through the introduction of nine representative sample invoices in conjunction with Cody's testimony.
The FOIC in its decision recognized the statutory exemptions for records pertaining to strategy with respect to pending claims, Gen. Stat. § 1-210(b)(4); and attorney-client communications, Gen. Stat. § 1-210(b)(10). But the FOIC concluded that the public records were not exempt from disclosure because the plaintiffs had not sustained their burden of proof.
The role of the trial court in this appeal with regard to questions of fact is not to retry the case or substitute its own judgment for that of the FOIC. Rather the court must sustain the agency's factual determinations and affirm its decision if there is substantial evidence in the record taken as a whole to support it. Salmon v. Dept. of PublicHealth and Addiction Services, 58 Conn. App. 642, 660-661 (2000), cert. granted on other grounds, 254 Conn. 926 (2000).
The record contains a small sample of voluminous materials requested by Edelman. It is apparent from the court's review of the sample documents and Cody's testimony that the materials contain a mixture of both potentially exempt and non-exempt entries. The plaintiffs advocated for the exemption of the documents in their entirety. This court finds that there is substantial evidence in the record to support the FOIC conclusion that the plaintiffs had not sustained their burdens of proof and that the counsel bills are not exempt from mandatory disclosure by virtue of General Statutes § 1-210(b)(4)(10). (ROR, p. 77.) New Havenv. Freedom of Information Commission, supra 205 Conn. 775-76.
 C. The Claim that General Statutes § 1-210(b)(10) Is Unconstitutional Because it Violates the Doctrine of Separation ofCT Page 2667 Powers
The plaintiffs argue that the executive branch of the state government by virtue of General Statutes § 1-210(b)(10) has been given the authority to determine what constitutes an attorney-client communication. They maintain that this constitutes and unconstitutional violation of the separation of powers doctrine because it usurps the authority of the judicial branch of government[6] to make this determination.
The court's analysis of this issue must begin with the recognition of several firmly established principles of law. "Legislation is presumed to be constitutional, and a litigant challenging its validity has the heavy burden to establish its unconstitutionality beyond a reasonable doubt."Stafford Higgins Industries, Inc. v. Norwalk, 245 Conn. 551, 556 (1998);Northeast Savinag, F.A. v. Hintlian, 241 Conn. 269, 274 (1997).
 Because the powers of the three branches of government inevitably overlap, this court has consistently held that the doctrine of the separation of powers cannot be applied rigidly . . . and has refused to find constitutional impropriety in a statute simply because it affects the judicial function. . . .A statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts. . . . In accordance with these principles, a two part inquiry has emerged to evaluate the constitutionality of a statute that is alleged to violate separation of powers principles by impermissibly infringing on the judicial authority . . . A statute will be held unconstitutional on those grounds if: (1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; or (2) it significantly interferes with the orderly function of the Superior Court's judicial role.
(Internal quotation marks and citations omitted.) State v. Campbell,224 Conn. 168, 176-177 (1992); University of Connecticut Chapter, AAUPv. Governor, 200 Conn. 386, 394-395 (1986).
 The legislative history of the Freedom of Information Act contains almost no discussion of the act's application to the judicial. . . .The legislative CT Page 2668 history does, nevertheless, reveal a legislative concern for the independence of the judiciary and a legislative intent to avoid a collision with the prerogatives of the constitutional courts.
Rules Committee of the Superior Court v. Freedom of Information Commission,192 Conn. 234, 240 (1984).
The legislature through the enactment of the FOIA has expressed a strong public policy of free and open access to public records. Stamfordv. Freedom of Information Commission, supra, 241 Conn. 314. In so doing, however, it has recognized a number of exceptions from disclosures. Gen. Stat. § 1-210(b)(10) embodies the privilege prohibiting disclosures of attorney-client communications. As noted earlier, "Connecticut has a longstanding, strong public policy of protecting attorney-client communications." Metropolitan Life Ins. Co. v. Aetna Casualty SuretyCo., supra, 249 Conn. 48. The judiciary possesses the "inherent authority to regulate attorney conduct and to discipline the members of the bar."Statewide Grievance Committee v. Egbarin, 61 Conn. App. 445, 450-451
(2001).
Acting in accordance with this inherent authority the judges have promulgated Rules of Professional Conduct. Rule 1.6 mandates that "a lawyer shall not reveal information relating to representation of a client unless the client consents after consultation. . . ."[7]
The FOIC in its final decision clearly recognized and applied judicial standards which define attorney-client communications, citing the cases of Ullmann v. State, 230 Conn. 698, 711 (1994); Lafaive v. DiLoreto,2 Conn. App. 58, 65 cert. denied, 194 Conn. 801 (1984) (ROR, p. 88). Thus, FOIC did not determine the criteria or enforce a different set of standards than the courts as argued by the plaintiffs. (Plaintiff's Brief, p. 8).
Further, the court upon review of administrative agencies' application of an issue of law, here attorney-client confidentiality, "has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts." UnitedParcel Service, Inc. v. Administrator, supra, 209 Conn. 385. Thus, the standard applied by the FOIC in an individual case is subject to enhanced judicial scrutiny.
The court finds the plaintiffs have failed to sustain their burden to establish that the subject matter in issue lies exclusively within judicial control or that it interferes with the orderly functions of the CT Page 2669 court. Accordingly, the court finds for the defendants on this issue.
III. Conclusion
For the reasons set forth herein, the appeal from the FOIC's May 5, 1999 final decision is ordered dismissed.
BY THE COURT
PETER EMMETT WIESE, JUDGE