PATRICK J. BONA *v.* FREEDOM OF INFORMATION COMMISSION ET AL.

JOHN G. ROWLAND *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(15127)
(15128)

O'Connell, Landau and Freedman, Js.

Argued December 9, 1996—officially released March 12, 1997*

*Ralph G. Elliot*, for the appellants (defendant Hartford Courant Company et al.).

*James R. Smith*, with whom was *Dana A. D'Angelo*, for the appellee (plaintiff in the first case).

*James K. Robertson, Jr.*, for the appellee (plaintiff in the second case).

FREEDMAN, J. These cases are appeals from the judgments of the trial court sustaining consolidated appeals by the plaintiffs, Patrick J. Bona and John G. Rowland, from a decision of the named defendant, the freedom of information commission (commission). The commission had ordered disclosure of a police incident report (report) concerning an alleged incident in April, 1994, at the Middlebury home of Deborah Rowland,

---

* March 12, 1997, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

the former wife of Rowland, the present Governor of Connecticut. We affirm the judgments of the trial court.

The following facts, as found by the commission and adopted by the trial court, are relevant to these appeals. On October 10, 1994, the defendant Craig Baggott, a political reporter for the defendant Hartford Courant Company (Courant), hand delivered to the Middlebury police department a written request for incident reports, domestic violence reports and related materials, for the dates of April 9, 10 and 11, 1994. This request did not mention Rowland or his former wife. On October 11, 1994, Baggott hand delivered to Bona, the Middlebury police chief, a written request for all reports of "an incident at the Rowland home on South Street in Middlebury during April." The request sought the disclosure of the records "today" and asked for a response "as soon as possible." Upon receiving this request, Bona told Baggott that he would refer it to the town attorney. When Baggott pressed him for a response, Bona stated that he would not provide the information that day.

On the following day, October 12, counsel for the Courant faxed a letter to Mitchell W. Pearlman, an attorney who is the executive director of and general counsel to the commission. The letter informed Pearlman that Baggott had made a written request to Bona, which Bona had denied on October 11. Counsel for the Courant requested in the letter that the denial of Baggott's October 10 request be heard simultaneously with commission docket number FIC 94-252 (FIC 94-252), the denial of a previous request dated September 1, 1994.[1] The hearing on FIC 94-252 was scheduled to be heard the following day, October 13. A copy of the letter was faxed to Bona and the Middlebury town counsel.

[1] See footnote 4.

On October 14, Baggott received a written response to his October 10 and 11 requests in a letter from Bona dated October 13. With respect to "reports of an incident at the Rowland home," Bona provided Baggott with a copy of the "incident history" and, apparently relying on General Statutes § 1-19 (b) (3) (G),[2] stated that he would not disclose the full incident report because it contained uncorroborated allegations subject to destruction pursuant to General Statutes § 1-20c.[3] The incident history revealed that Deborah Rowland had made a complaint to the Middlebury police on April 10, 1994, concerning an incident identified in the incident history as "family offenses, nonviolent" and "verbal between husband and wife."

At the October 13, 1994 commission hearing, Deane C. Avery, the commissioner to whom the matter had been assigned, denied the Courant's request to hold a simultaneous hearing that day on the September 1 and the October 10 and 11 requests for the report.[4] On Octo-

[2] General Statutes § 1-19 (b) provides in relevant part: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (3) records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (G) uncorroborated allegations subject to destruction pursuant to section 1-20c . . . ."

[3] General Statutes § 1-20c provides: "Except for records the retention of which is otherwise controlled by law or regulation, records of law enforcement agencies consisting of uncorroborated allegations that an individual has engaged in criminal activity shall be reviewed by the law enforcement agency one year after the creation of such records. If the existence of the alleged criminal activity cannot be corroborated within ninety days of the commencement of such review, the law enforcement agency shall destroy such records."

[4] The hearing thus proceeded only in FIC 94-252, the denial of the September 1 request. Counsel for Rowland and Bona conceded at that hearing that there was no incident report involving Rowland for April 14, 15 or 16, the dates specified in the September 1 request. The outcome of that commission case is not at issue in the present appeal.

ber 13, Avery also assigned an October 17, 1994 hearing date on the Courant's October 10 and 11 requests for the report, docketed as commission docket number FIC 94-255 (FIC 94-255).

At the hearing on October 17, Rowland was granted party status at his request. Both Bona and Rowland filed or orally made several motions at the outset of the hearing, raising several alleged procedural irregularities. All of the motions were denied by Avery and the hearing proceeded on the merits. On October 31, 1994, the commission issued its final decision in FIC 94-255, in which it ordered disclosure of the report within twenty-four hours of the decision and permitted Bona to redact certain portions of the report because they referred "to third parties who are not the subjects of the incident in question."

Bona and Rowland appealed the commission decision to the Superior Court. At the hearing, the parties filed written stipulations that Bona and Rowland initiated these appeals, that Bona is the keeper of the records of the Middlebury police department and is responsible for the report, that Rowland is a subject mentioned in the report and was admitted as a party in the proceedings before the commission. The trial court found that Bona and Rowland were both aggrieved by the commission decision from which they appealed.

The trial court further found, inter alia, that "substantial rights of the plaintiffs Bona and Rowland have been prejudiced by the [commission's] final decision ordering disclosure of the report, which the court finds is exempt from mandatory disclosure. The final decision was affected by error of law in the commission's application and interpretation of the exemption under General Statutes § 1-19 (b) (3) (G), [was] clearly erroneous in view of the reliable, probative and substantial evi-

dence on the whole record and [was] arbitrary and characterized by abuse of discretion." Consequently, the trial court sustained the appeals of Bona and Rowland, and the Courant appealed to this court.

On appeal, the Courant[5] argues that the trial court improperly (1) interpreted § 1-19 (b) (3) (G) or § 1-20c as containing no obligation on the part of the police to make a good faith attempt to corroborate allegations before § 1-19 (b) (3) (G) may be invoked, (2) interpreted § 1-19 (b) (3) (G) as not requiring the custodian of records to make a finding as to the public interest before refusing to disclose, (3) found that there was only one document, not three, at issue, (4) found that the documents at issue and in their totality were exempt from disclosure under § 1-19 (b) (3) (G), and (4) found that an interview that Courant reporter Christopher Keating had with Avery was an illegal ex parte communication under General Statutes § 4-181.

I

We first consider whether the report consisted of one document or three documents. The Courant argues that the trial court improperly viewed the three page report as a single document, when in fact there are three separate and distinct records concerning the incident at the Rowland home on April 10, 1994. These documents, as described in the final decision of the commission, "consist of three single page documents: one document . . . is entitled an 'Incident Report Summary Sheet,' the second document . . . is entitled 'Incident Report Narrative' and the third document . . . is an analysis for submission to the state police." The Courant argues that each of these documents constitutes a separate and distinct "public record" within the meaning of General

[5] Unless otherwise noted, the defendants Baggott, Courant reporter David Fink, who filed the appeal in FIC 94-252, and the Courant will collectively be referred to as the Courant.

Statutes § 1-18a (d) and, therefore, that each of them constitutes a separate record subject to the Freedom of Information Act, General Statutes § 1-7 et seq. (act). We disagree.

The trial court found that the Courant's claim was not substantiated by the evidence in the record, stating that "[i]n accordance with [commission] regulations, Bona certified under oath to the [commission] that the three pages are '*the* original incident *report* for case number 94-02511.' (Emphasis added.) Regs., Conn. State Agencies § 1-21j-35 (f) (5). It is clear that all three pages are treated as one report by Middlebury police." Counsel for the Courant conceded at oral argument before this court that the question of whether the report constitutes one document or three documents was a question of fact to be resolved by the trial court, and that on appeal we apply the "clearly erroneous" standard.[6] From our review of the evidence, including an examination of the three page report, we cannot say that the trial court's conclusion that the report constitutes one document rather than three documents was clearly erroneous.

II

We next consider the Courant's arguments regarding the statutory interpretation of §§ 1-19 (b) (3) (G) and 1-20c. According to the Courant, the trial court's statutory interpretation leads to consequences unintended by the legislature and against the public interest. We disagree.

The trial court found that the report was exempt from disclosure under § 1-19 (b), which provides that "[n]othing in sections 1-15, 1-18a, 1-19 to 1-19b, inclu-

---

[6] "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Durkin* v. *Durkin*, 43 Conn. App. 659, 662, 689 A.2d 344 (1996).

sive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (3) records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (G) uncorroborated allegations subject to destruction pursuant to section 1-20c . . . ." General Statutes § 1-20c provides that "[e]xcept for records the retention of which is otherwise controlled by law or regulation, records of law enforcement agencies consisting of uncorroborated allegations that an individual has engaged in criminal activity shall be reviewed by the law enforcement agency one year after the creation of such records. If the existence of the alleged criminal activity cannot be corroborated within ninety days of the commencement of such review, the law enforcement agency shall destroy such records."

Applying those statutes, the trial court held that the report contains uncorroborated allegations of criminal activity that are subject to destruction pursuant to § 1-20c.[7] The trial court held, therefore, that the report was exempt from disclosure pursuant to § 1-19 (b) (3) (G).

[7] The trial court held that the commission's finding that it could not ascertain any allegations of criminal activity in the report was clearly erroneous. The trial court stated in part that "[i]nformation previously disclosed by Bona established that Ms. Rowland made a complaint to Middlebury police about an incident at her home on April 10, 1994, which was later termed by the police 'family offenses, nonviolent' and 'verbal between husband and wife.'

The report reveals that two phone calls were placed to Middlebury police, who went to Ms. Rowland's home and interviewed her with respect to what had occurred. The allegations made to police as set forth in the report constitute 'uncorroborated allegations that an individual has engaged in criminal activity' within the meaning of General Statutes § 1-20c. Black's Law Dictionary, 6th Ed., defines 'crime' as 'a positive or negative act in violation of penal law.' Ms. Rowland described for the police what had occurred at her home prior to the arrival of the police. The report sets forth her description of what happened. The events as she described them

The act "expresses a strong legislative policy in favor of the open conduct of government and free public access to its records. . . . The act does not, however, confer upon the public an absolute right to all government information. . . . In those limited circumstances where the legislature has determined that some other public interest overrides the public's right to know, it has provided explicit statutory exceptions. See, e.g., General Statutes § 1-19 (b). We have held that these exceptions must be narrowly construed." (Citations omitted; internal quotation marks omitted.) *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 266, 579 A. 505 (1990).

The legislative history of §§ 1-19 (b) (3) (G) and 1-20c is helpful in guiding our interpretation. Section 1-20c was enacted in 1988, as § 2 of Public Acts 1988, No. 88-227 (P.A. 88-227). The statute was originally designed to deal with files of the statewide organized crime investigative task force.[8]

Section 3 of P.A. 88-227, which had been codified as General Statutes § 1-20d, related to the alteration of records of law enforcement agencies prior to disclosure.[9] Specifically, it provided an exemption from dis-

constitute a violation of the Connecticut penal code, General Statutes § 53a-1 et seq., in at least one respect. The criminal offense in question is cited on the third page of the report by reference to a specific section of the penal code. The offense which is specified is a class C misdemeanor. The report also reveals an unsuccessful attempt by Middlebury police to substantiate the allegations. It is difficult to understand how the commission could overlook this citation of a criminal offense."

[8] Public Act 88-227 was entitled "An Act Concerning the Disclosure of Information by the Statewide Organized Crime Investigative Task Force." Contrary to the argument made in the Courant's brief, however, there is nothing in P.A. 88-227 that suggests that § 1-20c was to apply only to allegations of criminal activity made by the police rather than allegations made to the police.

[9] General Statutes (Rev. to 1989) § 1-20d provides in relevant part: "Copies of records of law enforcement agencies disclosed pursuant to this chapter or otherwise may first be altered by removal of: (1) Any information which would contribute to the identification of an informant; (2) any uncorrobo-

closure for uncorroborated information that might damage a person's reputation. Thus, as the trial court noted, "[P.A.] 88-227, [in § 2], established the affirmative duty on the part of law enforcement agencies to review their records of uncorroborated allegations one year after they were created and to destroy such records if the allegations could not be corroborated within ninety days thereafter. Concomitantly, [in § 3], the General Assembly provided that law enforcement agencies could redact three types of information from their records prior to public disclosure: information relating to informants, information relevant to a present or future law enforcement action and uncorroborated information which would be significantly damaging to the reputation of someone who had not been convicted of a crime."

In 1990, the legislature enacted No. 90-335 of the 1990 Public Acts, which repealed § 1-20d. At the same time, however, the legislature added the following exemption from disclosure for records of law enforcement agencies: "uncorroborated allegations subject to destruction pursuant to Section 1-20c." This exemption is now codified at § 1-19 (b) (3) (G). The purpose of this amendment was to provide protection to those individuals who are subject to uncorroborated allegations.[10]

rated information which, if publicly known, would significantly damage the reputation of a person not convicted of a crime related to such uncorroborated information . . . and (3) any information relevant to a present or future law enforcement action." Section 1-20d was repealed by Public Acts 1990, No. 90-335.

[10] Then Senator Richard Blumenthal, speaking in favor of Public Acts, No. 90-335, stated: "What this bill does or would do is essentially to provide for an exemption from disclosure under the FOI, the Freedom of Information Act for records for uncorroborated accusations against individuals that are subject to destruction under Section 1-20c of the Connecticut General Statutes. Those are the kinds of records which after a year must be reviewed by a law enforcement agency and destroyed within 90 days if there is no evidence to corroborate the accusations or allegations of an individual.

"The purpose really is to provide some protection for individuals who may be the subject of these kinds of allegations and who deserve some

With this background, we now consider the Courant's specific arguments regarding whether the trial court properly concluded that the report was exempt from disclosure.

## A

The Courant argues that the report was not subject to destruction pursuant to § 1-20c. According to the Courant, § 1-19 (b) (3) (G) was intended to exempt *only* those records where the effort had been made and police had found that they *could not* corroborate the existence of criminal activity. All other documents are records in which criminal activity *might* be corroborated and these were to be open for public inspection and copying. The Courant argues that the ability of the public to see these documents during this period serves an important public safety purpose. The Courant contends that by allowing the public to know that accusations have been made, the statute increases the possibility that during the period of investigation guaranteed by § 1-20c witnesses who can and will corroborate the allegations may come forward, thus removing the documents from the destruction provisions of § 1-20c and therefore from the exemption provisions of § 1-19 (b) (3) (G). Finally, the Courant argues that the effect of interpreting subparagraph (G) to seal these files from the moment of their creation is to frustrate any attempt to corroborate the allegations contained in them and to ensure that after fifteen months the police will be unable to corroborate, thus ensuring their destruction under § 1-20c. We disagree with the Courant's interpretation.

We first note that "[t]o determine the intent of the legislature, we first consider whether the statutory language yields a plain and unambiguous resolution. . . .

protection against disclosure under the FOIA." 33 S. Proc., Pt. 5, 1990 Sess., pp. 1546–47.

If the words are clear and unambiguous, it is assumed that [they] express the intention of the legislature. . . . The words of a statute must be interpreted according to their ordinary meaning unless their context dictates otherwise. . . ." (Internal quotation marks omitted.) *State* v. *Theriault*, 38 Conn. App. 815, 828, 663 A.2d 423, cert. denied, 235 Conn. 922, 666 A.2d 1188 (1995). We further note that "[i]n construing statutes, we must use common sense and must not interpret statutes to yield bizarre and irrational results." *Cross* v. *Hudon*, 42 Conn. App. 59, 66, 677 A.2d 1385, cert. denied, 239 Conn. 932, 683 A.2d 400 (1996).

We conclude that pursuant to the clear and unambiguous language of §§ 1-19 (b) (3) (G) and 1-20c, records of uncorroborated allegations are not to be disclosed during the fifteen month period in which corroboration is sought. Furthermore, if the report was made public during the initial fifteen month period, then, as noted by the trial court, "there would be no purpose to either the corroboration effort, which must begin on the one year anniversary of the creation of the record, or to the destruction of the record if uncorroborated, for the content would have already been made public." We agree with the trial court that it would be an "illogical interpretation" to provide for the destruction of uncorroborated records after they had already been made public. In addition, if we follow to its logical conclusion the Courant's position that a report is open for inspection and copying any time before it is determined that it cannot be corroborated, then regardless of how unfounded a report may be, it would not be exempt if one could be fast enough to file a request for release before it was possible to conduct an investigation.

We further note that even if we were to venture beyond the words of the statute, the interpretation urged by the Courant—that the information, even if uncorroborated, should be disclosed during the initial

fifteen month period—is not supported by the legislative history of P.A. 88-227. Rather, the legislative history supports the interpretation urged by the plaintiffs, namely, that the information should not be disclosed during the fifteen month period unless and until it is corroborated.[11] If the report is corroborated any time within the fifteen month period, it can never fall within the purview of § 1-20c.

## B

The Courant argues that § 1-19 (b) (3) (G) is unavailable to custodians who have failed to make a good faith attempt to corroborate. According to the Courant, the word "cannot," as used in § 1-20c, denotes impossibility, and a finding of impossibility implies a good faith attempt. The Courant contends that in the present case, the attempted corroboration consisted of only a cursory and momentary inquiry, begun and concluded on the day of the incident, and that while such an investigation might support a finding of "has not yet corroborated," it cannot support a finding of "cannot be corroborated."[12]

---

[11] The legislative history contains the following colloquy:

"Representative [Linda M.] Emmons: Representative Levin, I would just like to ask you a few questions, to try to find the order in which this is going to happen. Section 2 pretty much says that the records and information shall be reviewed by the agency one year after the creation of such records, and if the activity cannot be corroborated with the 90 days of the commencement of the view, they shall destroy them. And during that period, which is one year and 90 days, are the records open under Chapter 3, or are they closed?

"Speaker [Irving J.] Stolberg: Representative Levin.

"Representative [Jay B.] Levin: Through you, Mr. Speaker, they would be closed.

"Speaker Stolberg: Representative Emmons.

"Representative Emmons: Thank you, Mr. Speaker. I think it would have been clearer if it had said that." 31 H.R. Proc., Pt. 12, 1988 Sess., pp. 4010–4011.

[12] The trial court, in its decision, stated that "[t]he report also reveals an unsuccessful effort by Middlebury police to substantiate the allegations." The trial court further stated that "[t]he report was written and signed on April 11, 1994, the day after Middlebury police were summoned to Ms.

Section 1-20c provides that "records of law enforcement agencies consisting of uncorroborated allegations . . . shall be reviewed by the law enforcement agency one year after the creation of such records." The statute further provides that the law enforcement agency shall destroy such records within ninety days of the commencement of the review if they cannot be corroborated.

If we accept the Courant's argument, the commission would then be required not only to determine if the allegations had been corroborated but also to review the actions of the law enforcement agency to see if the agency, in the opinion of the commission, has conducted a sufficient investigation in order to obtain such corroboration.[13] Nowhere do we find the authority for this proposition. We decline to interpret the language of § 1-20c to require such a finding by the commission that there was a good faith attempt to corroborate. We agree with the plaintiffs that the purpose of the act was

Rowland's home. The report shows that Middlebury police as of April 11 had made efforts to corroborate the allegations of criminal activity, but had not yet been successful."

[13] According to the Courant, although the police chief generally makes the determination regarding whether a good faith attempt to corroborate was made, ultimately the decision will be that of the commission if a complaint is made under the act. The transcript of the oral argument before this court reveals the following:

"The Court: Do you find in that statute a duty upon the police to attempt to corroborate every complaint which is made to the department?

"Mr. Elliot: I find in that statute a duty on the police to make a good faith attempt to corroborate because, unless they do, under the plain meaning of the word 'cannot' be corroborated, 'cannot' is the word the legislature used. Not might not, or, hasn't been, but 'cannot.' No one can make the finding under 1-20c that the record cannot be corroborated. And there is ample case law, and I have cited in my brief, where 'cannot' implies a good faith attempt to try.

"The Court: Who would determine whether or not a good faith attempt was made? How is that determination to be made? And by whom?

"Mr. Elliot: If there is an FOI complaint, ultimately, the freedom of information commission. But the police chief makes the determination. And in 9999 cases out of 10,000, no one knows about it."

to ensure openness in government and access by the public, not to establish the actions law enforcement agencies must take when acting upon a complaint or otherwise to impose standards for police investigations.[14]

## C

The Courant next argues that § 1-19 (b) (3) (G) is unavailable to custodians who have failed to determine that disclosure would not be in the public interest.[15] We disagree.

Section 1-19 (b) (3) provides an exemption from the mandatory disclosure of police records "if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (G) uncorroborated allegations subject to destruction pur-

[14] It is important to note what is before us and what is not before us. Although, in general, law enforcement agencies have a duty to investigate complaints in a proper and timely manner, the issue of what constitutes a proper and timely investigation is not before us, nor should anything contained in this opinion be interpreted to reflect otherwise on this issue. What is before us, as stated previously, is whether §§ 1-19 (b) (3) (G) and 1-20 require the commission to review actions of law enforcement agencies to determine whether the agency has conducted a sufficient investigation. "We must construe the act as we find it, without reference to whether we think it would have been or could be improved by the inclusion of other provisions. . . . Where the statutory language is clearly expressed, as here, courts must apply the legislative enactment according to the plain terms and cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *Manson,*196 Conn. 309, 315, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986). "[I]t is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and courts must apply statutory enactments according to their plain terms." (Internal quotation marks omitted.) *Glastonbury Co.* v. *Gillies*, 209 Conn. 175, 180–81, 550 A.2d 8 (1988).

[15] In the present case, the trial court noted that it was undisputed that Bona had made no specific finding concerning the public interest when he determined that the report was exempt from disclosure under § 1-19 (b) (3) (G). The trial court ruled, however, that no such finding was required.

suant to section 1-20c . . . ." The Courant argues that, by including the phrase "not in the public interest because," the legislature clearly manifested an intent that the custodian of records make an assessment as to the effect on the public interest of disclosing uncorroborated information. The Courant posits that only if the custodian has made the assessment that it would *not* be in the public interest to disclose the records is there justification for the refusal to make the disclosure.

In *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 585 A.2d 96 (1991), the issue was whether a personnel evaluation of a state's attorney was exempt from the disclosure requirements of the act by reason of § 1-19 (b) (2), which provides an exemption from mandatory disclosure for "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ." The Supreme Court in *Chairman* stated that "[t]he [commission], in determining if an invasion of privacy would result from disclosure of the personnel evaluation, applied a balancing test. Section 1-19 (b) (2) does not require such a balancing test. We have held that if the 'statutory language . . . is clear and unambiguous . . . courts cannot, by construction, read into such statutes provisions which are not clearly stated.' *Frazier* v. *Manson*, 176 Conn. 638, 642, 410 A.2d 475 (1979). We note that an exemption under § 1-19 (b) (1), which excludes disclosure of 'preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure,' expressly requires a balancing test in determining when information may be disclosed. The fact that the legislature specifically declined to include a balancing requirement in § 1-19 (b) (2) is strong evidence that a balancing test is inappropriate when applying § 1-19 (b) (2)." *Chairman* v. *Freedom of Information Commission*, supra,

200. Similarly, § 1-19 (b) (3) (G) contains no such express requirement of a balancing test. We hold therefore that the legislature has not required a balancing test prior to a determination that a document is exempt from disclosure pursuant to § 1-19 (b) (3) (G).

We also refer to the other subparagraphs of § 1-19 (b) (3) to support our conclusion that the legislature has already made the determination that uncorroborated allegations subject to destruction pursuant to § 1-20c should not be disclosed. Section 1-19 (b) (3) prefaces subparagraphs (A) through (G) with "if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . ." Those subparagraphs include records identifying informants not otherwise known, signed statements of witnesses, information to be used in a prospective law enforcement action if prejudicial to such action, investigatory techniques, arrest records of a juvenile, and the name and address of the victim of a sexual assault.[16] One can hardly argue that the legislature intended that a balancing test be applied before a law enforcement agency declines to release the name and address of a victim of a sexual assault or information to be used in a law enforcement action if prejudicial to such action. We conclude that in these provisions, as in § 1-19 (b) (3) (G), the legislature has determined that disclosure

---

[16] Subparagraphs (A) through (F) of § 1-19 (b) (3) provide exemptions for "(A) the identity of informants not otherwise known or the identity of witnesses not otherwise known whose safety would be endangered or who would be subject to threat or intimidation if their identity was made known, (B) signed statements of witnesses, (C) information to be used in a prospective law enforcement action if prejudicial to such action, (D) investigatory techniques not otherwise known to the general public, (E) arrest records of a juvenile, which shall include any investigatory files, concerning the arrest of such juvenile, compiled for law enforcement purposes, (F) the name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, or injury or risk of injury, or impairing of morals under section 53-21, or of an attempt thereof . . . ."

would not be in the public interest and that no balancing is required.

## D

The Courant argues that records are not "subject to" destruction pursuant to § 1-20c until, after investigation, it has been determined that the allegations in them "cannot" be corroborated.

As previously indicated, records under § 1-19 (b) (3) (G) are not exempt from mandatory disclosure unless they are "subject to destruction pursuant to section 1-20c." In its brief, the Courant seeks to have us conclude that this language means that "the records sought to be exempted *have already* been subjected to that degree of good faith investigation which is the condition precedent to a finding under § 1-20c that the allegations in a record 'cannot' be corroborated, and therefore it must be destroyed." (Emphasis in original.) Specifically, the Courant contends in its brief that "[i]n the specific context in which the phrase 'subject to destruction' is used in § 1-19 (b) (3) (G) to describe public records, the only rational reading of the phrase is that the records have *already* been determined under § 1-20c to contain allegations that 'cannot' be corroborated, and therefore must be destroyed on or after their first anniversary, and therefore ought not to be disclosed." (Emphasis in original.) We disagree with this interpretation.

As correctly noted by the trial court, "§§ 1-19 (b) (3) (G) and 1-20c, interpreted reasonably together, provide an exemption from disclosure for uncorroborated allegations during the fifteen months between the creation of the record and completion of the effort to review and corroborate." If, during or at the end of the fifteen month period, the allegations are corroborated, the records would be disclosed pursuant to General Statutes § 1-19 (a). As the trial court concluded, "[i]f, by the end of the fifteen month period, the allegations

'cannot be corroborated' in the wording of § 1-20c, the record then must be destroyed. Section 1-19 (b) (3) (G) provides an exemption for records 'subject to' destruction. The term 'subject to' indicates a future possibility of destruction, thus exempting the records during the fifteen month period."

We agree with the conclusion of the trial court that records are "subject to destruction" during the fifteen month period between the creation of the record and either corroboration or destruction of the record.

### III

The Courant's final argument involves an alleged ex parte communication between Courant reporter Keating and Avery, the commissioner to whom the matter had been assigned. The Courant claims that the trial court improperly found that the interview between Keating and Avery was an ex parte communication in violation of § 4-181.[17] The trial court, however, went on to find that the commission had sustained its burden of proving that no prejudice resulted to either Bona or Rowland as a result of this ex parte communication and, as a result, the court did not grant them any relief on this basis.

"[A] requisite element of appealability is that the party claiming error in the decision of the trial court be aggrieved . . . for if a party attempting to appeal can by no possibility suffer injury by the judgment, he should not be permitted to appeal. . . ." (Citations omitted; internal quotation marks omitted.) *Local*

---

[17] General Statutes § 4-181 (a) provides: "Unless required for the disposition of ex parte matters authorized by law, no hearing officer or member of an agency who, in a contested case, is to render a final decision or to make a proposed final decision shall communicate, directly or indirectly, in connection with any issue of fact, with any person or party, or, in connection with any issue of law, with any party or the party's representative, without notice and opportunity for all parties to participate."

*1303 & Local 1378* v. *Freedom of Information Commission*, 191 Conn. 173, 175–76, 463 A.2d 613 (1983).

In light of the finding of the trial court that no prejudice resulted from this ex parte communication and the fact that the court did not grant the plaintiffs any relief on that basis, we conclude that the Courant suffered no injury and, therefore, this issue is not appealable.

The judgments of the trial court are affirmed.

In this opinion the other judges concurred.