CITY OF STAMFORD ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(15531)

Borden, Norcott, Katz, McDonald and Peters, Js.

Argued March 25—officially released June 10, 1997

*Kenneth B. Povodator,* assistant corporation counsel, with whom, on the brief, was *Thomas M. Cassone,* for the appellant (named plaintiff).

*Victor R. Perpetua,* with whom, on the brief, were *Mitchell W. Pearlman,* general counsel, and *Barbara Housen,* for the appellee (named defendant).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

MCDONALD, J. The sole issue presented in this certified appeal is whether an investigative report prepared for the city of Stamford is exempt from disclosure under the Freedom of Information Act (act) pursuant to either General Statutes § 1-19 (b) (4) or General Statutes (Rev. to 1993) § 1-19b (b) (1).[1] Here the report concerns issues related to litigation involving Stamford. We conclude that such a report is exempt from disclosure under § 1-19 (b) (4).[2]

The following facts can be gleaned from the record. In September, 1992, the plaintiff, the city of Stamford,[3]

---

[1] General Statutes § 1-19 (b) provides in relevant part: "Nothing [in the relevant disclosure statute] shall be construed to require disclosure of . . . (4) records pertaining to strategy and negotiations with respect to pending claims or pending litigation to which the public agency is a party until such litigation or claim has been finally adjudicated or otherwise settled . . . ."

General Statutes (Rev. to 1993) § 1-19b (b) provides in relevant part: "Nothing [in the relevant disclosure statutes] shall be deemed in any manner to (1) affect the status of judicial records as they existed prior to October 1, 1975, nor to affect the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state . . . ."

[2] Because we conclude that the report is exempt under § 1-19 (b) (4), we need not consider whether the report would also be exempt under § 1-19b (b) (1).

[3] The investigation was initiated at the request of the board of finance of the city of Stamford (board). The board has also been named as a plaintiff.

requested that Austin McGuigan[4] conduct an investigation into the propriety of several of the plaintiff's contracts and payments related to construction of a municipal transfer and recycling station, a municipal "haulaway" by the defendant Mallozzi Construction Company, Inc. (Mallozzi),[5] and repairs to a municipal incinerator. On September 16, 1992, McGuigan sent a letter to Mallozzi outlining the scope of the investigation. The result of the investigation was a report prepared by McGuigan (McGuigan report) and submitted to the plaintiff in May, 1993.

In February, 1993, prior to the completion of the McGuigan report, the plaintiff commenced a lawsuit against Mallozzi seeking to recover excess sums paid by the plaintiff for Mallozzi's performance of the "haulaway" contract between Mallozzi and the plaintiff. See *Stamford* v. *Mallozzi Construction Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV93-0130002. That lawsuit was still pending at the time of this appeal.

On June 2, 1993, Mallozzi sent a letter to the plaintiff requesting a copy of the McGuigan report. The plaintiff replied that the report was not subject to disclosure under the act and refused to comply with Mallozzi's request.

Mallozzi subsequently requested that the named defendant, the freedom of information commission (commission), determine whether the McGuigan report should have been disclosed under the act. In its final

The board, however, is a statutory creation; see General Statutes § 7-340; and has no existence independent of the city. In the interest of simplicity, we will refer to the city of Stamford and the board jointly as the plaintiff.

[4] McGuigan, an attorney with Hoberman and Pollack, P.C., was hired in large part because of his prior experience as chief state's attorney. The plaintiff has admitted that McGuigan was not hired as an attorney and that his report is not covered by attorney-client or work product privileges.

[5] Mallozzi is not a party to this appeal.

decision, the commission ordered the plaintiff to disclose the McGuigan report in compliance with General Statutes §§ 1-19 (a) and 1-15 (a).[6] This order was based in relevant part on the commission's finding that the plaintiff had failed to prove that "the [McGuigan] report pertains to strategy or negotiations with respect to the [pending] litigation [that the plaintiff brought against Mallozzi]" and, therefore, that the plaintiff failed to establish that the McGuigan report was subject to the exemption provided for in § 1-19 (b) (4).

The plaintiff appealed from the commission's decision to the trial court. The trial court determined that the commission's disclosure order should be upheld, and dismissed the plaintiff's appeal. The plaintiff appealed to the Appellate Court, which affirmed the trial court's judgment. *Stamford* v. *Freedom of Information Commission,* 42 Conn. App. 39, 40, 678 A.2d 512 (1996) (per curiam). We granted certification to appeal[7] and now reverse the judgment of the Appellate Court.

We begin our analysis with the law governing judicial review of the commission's decision. The scope of judicial review afforded by the Uniform Administrative Procedure Act is limited. See General Statutes § 4-183 (i)

---

[6] General Statutes § 1-19 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. . . ."

General Statutes § 1-15 (a) provides in relevant part: "Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. . . ."

[7] We granted certification limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the plaintiff, the city of Stamford, failed to establish that the McGuigan report was exempt from disclosure under either General Statutes § 1-19 (b) (4) or General Statutes § 1-19b (b) (1)?" *Stamford* v. *Freedom of Information Commission,* 239 Conn. 927, 683 A.2d 21 (1996).

(appeal confined to material in record); General Statutes § 4-183 (j) (court cannot substitute its judgment for that of agency as to weight of evidence on questions of fact and shall affirm agency's decision unless clearly erroneous). "[W]e must decide, *in view of all of the evidence*, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion." (Emphasis added; internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 164, 635 A.2d 783 (1993); see also *Almeida* v. *Freedom of Information Commission*, 39 Conn. App. 154, 157, 664 A.2d 322 (1995).

In conducting our review, we are also mindful of the purpose of the act. "The overarching legislative policy of the [act] is one that favors the open conduct of government and free public access to government records. . . . The sponsors of the [act] understood the legislation to express the people's sovereignty over the agencies which serve them . . . and this court consistently has interpreted that expression to require diligent protection of the public's right of access to agency proceedings. 'Our construction of the [act] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed.' " (Citations omitted; internal quotation marks omitted.) *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 712, 663 A.2d 349 (1995); see also *Bona* v. *Freedom of Information Commission*, 44 Conn. App. 622, 630, 691 A.2d 1 (1997). Our courts, however, have not hesitated to apply an exemption to disclosure where the party seeking the exemption has met the burden of establishing that it applies. *Glastonbury Education Assn.* v. *Freedom of Information Commission*, supra, 727; *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 43, 657 A.2d 630 (1995); *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn.

167; *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 232, 602 A.2d 1019 (1992); *Bona* v. *Freedom of Information Commission*, supra, 622.

The commission, the trial court and the Appellate Court determined that the plaintiff had failed to meet its burden of demonstrating that an exemption applied here. The trial court found that "[t]he only item of evidence introduced by the [plaintiff] was a one-sentence-long letter dated June 18, 1993, from the [plaintiff's] corporation counsel to Mallozzi's lawyer, denying Mallozzi's request for a copy of the McGuigan report." That court determined that it was reasonable for the commission to have concluded that this letter was insufficient to satisfy the plaintiff's burden. The Appellate Court similarly concluded that the plaintiff "did not present sufficient evidence to support [an] exemption." *Stamford* v. *Freedom of Information Commission*, supra, 42 Conn. App. 40. After careful review of the evidence in the record, we disagree with that conclusion.

The plaintiff maintains that it has met its burden because the letters from McGuigan to Mallozzi outlining the scope of his investigation and from Mallozzi to the plaintiff formally requesting the McGuigan report are sufficient to prove that the McGuigan report contained information that pertains to strategy or negotiation in its pending litigation against Mallozzi. See General Statutes § 1-19 (b) (4). The commission claims that because the letters were not formally introduced into evidence by the plaintiff, they should not be considered as part of the record. We disagree. Section 1-21j-39 of the Regulations of Connecticut State Agencies (regulations) defines the contents of the record in a contested commission case to include "complaints" and "the evidence received and considered by the commission." The contents of a complaint is defined in § 1-21j-42 (b) of the regulations to include "[a] concise and explicit statement of the facts on which the commission is expected

to rely in granting the relief sought, including but not limited to . . . (3) [t]he substance of the information sought by the complainant from the public records or the subject matter of the meeting of the public agency, if known. . . . [and] (4) [a] copy of any written application for a copy of a record . . . ."

These regulations support our conclusion that the two letters constitute part of the record. *Phelps Dodge Copper Products Co.* v. *Groppo*, 204 Conn. 122, 134, 527 A.2d 672 (1987). Each letter is part of the complaint Mallozzi filed with the commission. The letter of September 16, 1992, from McGuigan to Mallozzi outlining the scope of the investigation was relied on by Mallozzi to describe the substance of the information it sought. The letter of June 2, 1993, from Mallozzi to the plaintiff constituted a "written application for a copy of a record" and as such is considered part of the complaint. Regs., Conn. State Agencies § 1-21j-42 (b) (4). Furthermore, each letter was received and considered by the commission as is reflected by the inclusion of the letters in the commission's record summary.

The commission argues that the plaintiff failed to meet its burden of proof because it did not submit affidavits, testimony or the McGuigan report itself for an in camera inspection. The commission makes this argument in reliance on the line of cases following *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 776, 535 A.2d 1297 (1988). See also *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 176; *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 627, 609 A.2d 998 (1992); *Hartford* v. *Freedom of Information Commission*, 201 Conn. 421, 434–35, 518 A.2d 49 (1986). We conclude that the commission's reliance on these cases is misplaced.

In *New Haven*, this court stated that "the claimant of the [§ 1-19 (b) (4)] exemption [must] provide more

than conclusory language, generalized allegations or mere arguments of counsel. Rather, a sufficiently detailed record must reflect the reasons why an exemption applies to the materials requested." *New Haven* v. *Freedom of Information Commission*, supra, 205 Conn. 776. The plaintiff here is not relying on conclusory language, generalized allegations or mere arguments of counsel but rather on the language of the two letters that, we have concluded, constitute a part of the record.

The court in *New Haven* went on to conclude that "[n]either the administrative record nor the record on appeal [in that case] contains any evidence, either by way of expert testimony, testimony of a city representative, a relatively specific affidavit, a transcript of deposition testimony, or precedent, to support the . . . conclusion that the [documents] in question pertain to strategy and negotiations in the pending litigations." Id., 776–77. This kind of evidence was not mandated by *New Haven*, but, rather, was recognized as a suitable means of meeting the burden of proof.[8] Accordingly, although additional evidence might have been preferable in this case,[9] it was not essential if the evidence in the record before the commission was sufficient.

We therefore turn to the issue of whether the contents of the documents before the commission establish that the McGuigan report pertained to strategy or negotiations with respect to the pending litigation. See General Statutes § 1-19 (b) (4). We conclude, after thoroughly reviewing the record, that as a matter of law the only reasonable determination that the commission could

---

[8] In fact, the court in *New Haven* looked to the record in its entirety, specifically searching through the exhibits and transcript for evidence supporting an exemption. *New Haven* v. *Freedom of Information Commission*, supra, 205 Conn. 777.

[9] If the plaintiff had simply marked the letters as exhibits before the commission, it might have avoided the need for this appeal.

have reached was that the McGuigan report did so pertain.

We reach this conclusion based on the language contained in § 1-19 (b) (4) and the two letters upon which the plaintiff relies. Section 1-19 (b) (4) provides that disclosure is not required where the document pertains "to strategy and negotiations with respect to pending claims or pending litigation to which the public agency is a party until such litigation or claim has been finally adjudicated or otherwise settled." See footnote 1 of this opinion. "Strategy is defined as 'the art of *devising or employing plans or stratagems.*' (Emphasis added.) Webster's Third New International Dictionary. . . . Negotiation is defined as 'the action or process of negotiating,' and negotiate is variously defined as: 'to communicate or confer with another so as to arrive at the settlement of some matter: meet with another so as to arrive through discussion at some kind of agreement or compromise about something'; 'to arrange for or bring about through conference and discussion: work out or arrive at or settle upon by meetings or agreements or compromises'; and 'to influence successfully in a desired way by discussions and agreements or compromises.' Webster's Third New International Dictionary." *Glastonbury Education Assn.* v. *Freedom of Information Commission,* supra, 234 Conn. 721–22 (*Borden, J.,* concurring and dissenting).

We hold that the plaintiff has met its burden of proof as to each element of the § 1-19 (b) (4) exemption. The letters in the record indicate that the McGuigan report pertained to strategy and negotiations with respect to pending litigation. The September 16, 1992 letter from McGuigan to Mallozzi describes the scope of the investigation and explicitly states that the investigation is designed to "determine whether municipal funds were improperly spent and, if so, to assess the prospects for recovery of those funds." This letter also contains a

discussion of Mallozzi's haulaway contract with the plaintiff and makes it clear that Mallozzi was a focal point of the investigation. The June 2, 1993 letter from Mallozzi to the plaintiff is equally clear with respect to the nature of the McGuigan report. That letter states that the McGuigan report would provide "the opportunity for a new look at the merits [of the pending law suit] by both sides . . . [and] should give both [parties] a chance to evaluate settlement possibilities . . . ." Here, the action brought by the plaintiff against Mallozzi, seeking to recover excess sums paid for the haulaway contract, was pending in the courts at the time of the request for disclosure and was still pending during this appeal. Our consideration of this evidence leads us to conclude that it would be unreasonable to hold that the McGuigan report does not pertain to strategy and negotiations with respect to the litigation pending between Mallozzi and the plaintiff. Section 1-19 (b) (4) is applicable, therefore, to bar disclosure of the McGuigan report under the act.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other justices concurred.