******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom DiPENTIMA, J., joins in part, dissenting. Today's majority opinion substantially frustrates the clear legislative policy requiring transparency in the operations of government that is contained in the Freedom of Information Act (FOIA), General Statutes (Supp. 2014) § 1-200 et seq. In doing so, the majority has undermined the integrity of this court's previous construction of the FOIA and has thwarted the goal of open government by looking to a purported ambiguity in the Teacher Negotiation Act (TNA)[1] to conclude that a TNA arbitration panel is not a public agency subject to the open meetings requirement of the FOIA. While I agree with and join Justice Espinosa's comprehensive dissenting opinion concluding that the arbitration panel is a public agency under General Statutes (Supp. 2014) § 1-200 (1) (A),[2] I write separately to acknowledge the practical significance of the majority's misinterpretation of the meaning of "public agency" under the FOIA.

As this court previously has explained: "[T]he '[FOIA] expresses a strong legislative policy in favor of the open conduct of government and free public access to government records [and meetings].' . . . At the time of its unanimous passage by the General Assembly, the act was noted for making 'sweeping changes' in the existing 'right to know' law so as to 'mark a new era in Connecticut with respect to opening up the doors of city and state government to the people of Connecticut.' 18 S. Proc., Pt. 5, 1975 Sess., p. 2323; 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3907. The general rule under the act is disclosure. . . . As Representative Martin B. Burke, who sponsored the bill which was enacted, expressly stated on the floor of the house, the intent of the [FOIA] 'is to make every public record and every public meeting open to the public at all times with certain specified exclusions.' 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3907." (Citations omitted.) *Board of Trustees* v. *Freedom of Information Commission*, 181 Conn. 544, 550, 436 A.2d 266 (1980). "[T]his court consistently has interpreted [the FOIA's legislative policy] to require diligent protection of the public's right of access to agency proceedings. Our construction of the [FOIA] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed." (Internal quotation marks omitted.) *Stamford* v. *Freedom of Information Commission*, 241 Conn. 310, 314, 696 A.2d 321 (1997). Importantly, the "policy of liberal access to [meetings of public agencies] would necessarily be thwarted if [the statutory definition of] 'public agencies' were given a narrow construction . . . ." *Board of Trustees* v. *Freedom of Information Commission*, supra, 551.

Rather than view the question before us through this broad interpretive lens favoring transparency, the majority myopically focuses on concerns that, under the TNA, an arbitration panel is not *wholly* funded by the government and is subject to *minimal* oversight by the Department of Education (department) to conclude that the panel cannot be a "subunit" of the department.[3] Interestingly, although the majority concludes that the statutory language in the TNA is ambiguous, it fails to resolve this ambiguity in favor of the legislative purpose of the FOIA. As a result, the majority places a veil over evidentiary proceedings that concern undoubtedly public issues—municipal budgets and teachers' salaries.

The significance of the majority's conclusion is undeniable. As the most recent available data reflects, more than $4.5 billion was spent by Connecticut school districts on instructional staff and services in the 2009–2010 school year. Connecticut Department of Education, Connecticut Education Data and Research, "Finance—Total Annual Expenditures by Type," available at http://sdeportal.ct.gov/Cedar/WEB/ct_report/FinanceDTViewer.aspx (last visited December 5, 2014).[4] This expenditure represented *more than 37 percent* of the $12.1 billion spent by all municipalities for all governmental functions for 2009–2010. See Office of Policy and Management, "Municipal Fiscal Indicators, Fiscal Years Ended 2008–2012," (last modified March, 2014), p. A-8, available at http://www.ct.gov/opm/lib/opm/FI_2008-2012_Asof3-6-14.pdf (last visited December 5, 2014). Thus, in concluding that the TNA arbitration panels are not public agencies, and therefore ensuring that TNA evidentiary hearings remain closed to the public, the majority allows municipalities and the representatives of municipal employees to shield from public view the adjudicative process by which a significant portion of municipal resources are spent each year. The FOIA does not allow such a result.

The majority has concluded that members of the TNA arbitration panels, who are appointed by the governor, with the advice and consent of the General Assembly, and who discharge specific governmental duties in accordance with a comprehensive statutory scheme; General Statutes § 10-153f; are not "officials" of a " '[p]ublic agency' " of the state within the meaning of § 1-200 (1) (A). Such a conclusion ignores the essence of the arbitration panel members' statutory functions and is belied by the definition of a " '[p]ublic official' " in our state's Code of Ethics, which encompasses "any person appointed to any office of the . . . executive branch of state government by the Governor or an appointee of the Governor, with or without the advice and consent of the General Assembly . . . ." General Statutes (Supp. 2014) § 1-79 (11). I cannot abide such an interpretation of our open government laws.

Accordingly, I respectfully dissent.

[1] General Statutes § 10-153f.

[2] General Statutes (Supp. 2014) § 1-200 provides in relevant part: "(1) 'Public agency' or 'agency' means:

"(A) Any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official . . . ."

Although § 1-200 has been amended since the events underlying this appeal; see, e.g., Public Acts 2011, No. 11-220, § 1; the amendments have no bearing on the merits of this appeal. In the interest of simplicity, I refer to the current revision of the statute codified in the 2014 supplement.

Consistent with the majority opinion and this court's decision in *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission*, 219 Conn. 685, 687, 595 A.2d 313 (1991), I use the term "subunit" to refer to a committee of a public agency.

[3] I particularly agree with Justice Espinosa's criticism of the majority's failure to consider whether the arbitration panel could be deemed a public agency in its own right under § 1-200, even if not a subunit of the department. See footnote 3 of Justice Espinosa's dissenting opinion. In *DiFazio* v. *Executive Director, Judicial Review Council*, Freedom of Information Commission, Docket No. FIC 89-115 (March 14, 1990), the Freedom of Information Commission concluded that the Judicial Review Council was a public agency under the FOIA because it is "an institution, bureau, board, commission, or authority of the state." Like the TNA arbitration panels, the Judicial Review Council is made up of individuals appointed by the governor with the approval of the General Assembly; General Statutes § 51-51k; its members do not receive compensation for their services but instead are only reimbursed for expenses actually incurred in performance of their duties; General Statutes § 51-51t; and the Judicial Review Council performs statutorily defined public duties. See General Statutes §§ 51-51k through 51-51u.

[4] We take judicial notice of statistics that are public record. See *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 770 n.28, 12 A.3d 817 (2011) (recognizing that courts may take judicial notice of public records); 29 Am. Jur. 2d 134, Evidence § 109 (2008) (recognizing that state and federal records and statistics are recognized as public records of which courts may take judicial notice); see, e.g., *Sheff* v. *O'Neill*, 238 Conn. 1, 38 n.42, 678 A.2d 1267 (1996) (taking judicial notice of statistics compiled by Hartford Board of Education).