**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 23 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

SPRINT SPECTRUM, L.P., et al.,

    Plaintiffs-Appellants,

KANSAS CITY SMSA LIMITED
PARTNERSHIP, et al.,

    Plaintiffs-Intervenors-
    Appellants,

MOUNTAIN SOLUTIONS, INC.,

    Plaintiff,

v.

STATE CORPORATION
COMMISSION OF THE STATE OF
KANSAS, et al.,

    Defendants-Appellees,

SOUTHWESTERN BELL
TELEPHONE COMPANY, et al.,

    Defendants-Intervenors-
    Appellees.

_____

STATE OF TEXAS,

    Amicus Curiae.

Nos. 97-3180 & 97-3186

**APPEAL FROM THE UNITED STATES DISTRICT COURT**

## FOR THE DISTRICT OF KANSAS
### (D.C. No. CIV-97-2116-GTV)

---

Mark P. Johnson of Sonnenschein, Nath & Rosenthal, Kansas City, Missouri, (Jan P. Helder, Jr., Tamara Seyler-James, David S. Ladwig, Lisa C. Creighton, and Amy E. Bauman of Sonnenschein, Nath & Rosenthal, Kansas City, Missouri; Marc E. Elkins and Lisa J. Hansen of Morrison & Hecker, L.L.P., Kansas City, Missouri; and Joseph R. Colantuono of Wehrman & Colantuono, Overland Park, Kansas, with him on the brief) for Plaintiffs-Appellants and Plaintiffs-Intervenors-Appellants.

Eva Powers, Assistant General Counsel, (Glenda Cafer, General Counsel, Stephen H. Kukta, Assistant General Counsel, with her on the brief) State Corporation Commission of the State of Kansas, Topeka, Kansas for Defendants-Appellees.

Michael D. Moeller of Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri, (Michael C. Cavell of Southwestern Bell Telephone Company, Topeka, Kansas; Mark E. Caplinger of James M. Caplinger, Chartered, Topeka, Kansas, with him on the brief) for Defendants-Intervenors-Appellees.

Dan Morales, Attorney General, Jorge Vega, First Assistant Attorney General, David A. Talbot, Jr., Special Assistant Attorney General, Karen W. Kornell, Assistant Attorney General, and Andrew S. Miller, Assistant Attorney General, State of Texas, Austin, Texas, filed an amicus curiae brief for the State of Texas.

---

Before **BRORBY** , **McWILLIAMS** , and **HENRY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

---

The plaintiffs, wireless phone service providers ("wireless providers"), appeal the district court's denial of their request for a preliminary injunction. They sought to enjoin the Kansas Corporation Commission ("Commission") from

2

requiring them to contribute to Kansas's Universal Service Fund ("KUSF") and from fining them if they do not contribute. The district court denied the injunction, finding, first, that the wireless providers will not suffer irreparable injury if forced to contribute or if fined during the pendency of their suit, and second, that there is no substantial likelihood that the wireless providers will prevail on their claim that the Commission's order requiring them to contribute to the KUSF is preempted by federal law. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm the denial of the preliminary injunction on the latter ground, that there is not a substantial likelihood that the wireless providers will succeed on their preemption claim.

## I.   BACKGROUND

In 1996, the Kansas legislature adopted § 66-2008, which directs the Commission to establish the KUSF.   See Kan. Stat. Ann. § 66-2008(b) (1997 Supp.). Section 66-2008 mandates that the Commission require equitable, nondiscriminatory KUSF contributions from "every telecommunications carrier, telecommunications public utility and   wireless telecommunications service provider that provides intrastate telecommunications services. . . ."   Id. (emphasis added). In its order establishing the KUSF, the Commission rejected the wireless providers' argument that 47 U.S.C. § 332(c)(3)(A) preempts § 66-2008(b)'s

wireless provider contribution requirement.  <u>See</u> Aplts' App. vol. I, at 88-89.  The

wireless providers filed petitions for reconsideration with the Commission.  In its

Order on Reconsideration, the Commission affirmed its earlier decision.  <u>See</u> <u>id.</u>

at 127-30.

The wireless providers filed suit in federal district court to challenge the

Commission's finding that it was not preempted by federal law from requiring

wireless provider contributions.  While the district court considered their request

for permanent injunctive and declaratory relief, the wireless providers sought a

preliminary injunction to prevent the Commission from requiring them to

contribute to the fund or from fining them for failure to contribute.  The district

court denied the wireless providers' request for a preliminary injunction.


## II.   STANDARD OF REVIEW

"We review a district court's denial of a preliminary injunction for abuse of

discretion.  An abuse of discretion occurs only when the trial court bases its

decision on an erroneous conclusion of law or where there is no rational basis in

the evidence for the ruling."   <u>Chemical Weapons Working Group, Inc. v. United</u>

<u>States Dep't of the Army</u>, 111 F.3d 1485, 1489 (10th Cir. 1997) (internal

quotation marks and citations omitted).

4

# III. ANALYSIS

## A. Requirements for Preliminary Injunctive Relief

To win a preliminary injunction, the party seeking the injunction must show:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest.

Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Soc. and Rehabilitation Servs., 31 F.3d 1536, 1542 (10th Cir. 1994). The district court ruled that the wireless providers failed to satisfy the first two preliminary injunction requirements. However, we need not address the second because the first–substantial likelihood of prevailing on the merits–clearly supports the denial of the preliminary injunction.

## B. Failure to Prove Substantial Likelihood of Prevailing on the Merits

In 1996, Congress passed 47 U.S.C. § 254, which allows states to create and require contributions to universal service funds.

> A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State.

5

47 U.S.C. § 254(f) (emphasis added).  Acting pursuant to § 254, Kansas and other states, including Texas, which has filed an amicus brief in this case, adopted statutes requiring all intrastate telecommunications providers, including the wireless providers, to contribute to state universal service funds.

The wireless providers argue that the Commission is preempted from requiring them to contribute to the KUSF by 47 U.S.C. § 332(c)(3)(A), adopted in 1993, which reads:

> Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service,  except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services .  Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates   .  Notwithstanding the first sentence of this subparagraph, a State may petition the Commission for authority to regulate the rates for any commercial mobile service and the Commission shall grant such petition if such State demonstrates that [certain conditions not relevant to this appeal are met].

47 U.S.C. § 332(c)(3)(A) (emphasis added).  The wireless providers find it significant that the second sentence applies specifically to "mobile services." They also read the parenthetical language in the second sentence to set forth the only condition under which a state can require wireless providers to contribute to a universal service fund:  when there is a finding that wireless service is a

6

substitute for land line service for a substantial portion of the state. They argue that the regulatory limitations in the second sentence were not overruled by the Telecommunications Act of 1996, including § 254(f), because the 1996 Act only allows for express modification of earlier federal statutes, see Telecommunications Act of 1996, Pub. L. No. 104-104, § 601(c), 110 Stat. 143 ("This Act . . . shall not be construed to modify, impair, or supersede Federal . . . law unless expressly so provided in such Act . . . ."), and § 254(f) contains no such express modification. Finally, they read § 253(e)'s proscription that "[n]othing in this section shall affect the application of section 332(c)(3) of this title to commercial mobile service providers" as further negating any effect § 254(f) could have on § 332(c)(3)(A).

The Commission readily admits that it never found wireless service to be a substitute for land line service in Kansas. However, the Commission avers that no such finding is necessary because § 254(f) requires "[e]very telecommunications carrier" to contribute to the KUSF, without exception, and § 332(c)(3)(A) does not contradict that mandate. In fact, according to the Commission, the first sentence of § 332(c)(3)(A) supports its reading of § 254(f) by clarifying that, although states may not regulate "entry" or "rates," the states may "regulat[e] the other terms and conditions of commercial mobile services." § 332(c)(3)(A). By the Commission's reckoning, "other terms and conditions"

7

include KUSF contribution requirements. The Commission also reads the second sentence of § 332(c)(3)(A) to apply, in context, as an exemption to the prohibition of "entry" and "rate" regulations in § 332(c)(3)(A)'s first sentence. In other words, the Commission conflates "requirements" with entry and rates regulation, and concludes that a state must show that wireless service is a substitute for land line service only if it wishes to impose entry and rate regulations "necessary to ensure . . . universal availability . . . ." § 332(c)(3)(A). Finally, the Commission points out that the introductory language in the second sentence of § 332(c)(3)(A) limits that sentence's applicability to that subparagraph.

The Federal Communications Commission ("FCC") recently entered the fray when it adopted rules allowing states to require universal service fund contributions from wireless providers. See generally 47 C.F.R. §§ 36, 54, & 69 (1997). The FCC's Report and Orders promulgating these rules considered and rejected the wireless providers' claim that state USF contribution requirements established pursuant to § 254(f) conflict with § 332(c)(3)(A). See Universal Service, 63 Fed. Reg. 2,094, 2,117 ¶ 144 (1998) (citing In re Petition of Pittencrieff Communications, Inc., 9 Communications Reg. (P & F) 1041, 1997 WL 606233 (Fed. Communications Comm'n Oct. 2, 1997)); Universal Service, 62 Fed. Reg. 32,862, 32,926 ¶ 453 (1997). The FCC followed the interpretation of the statutes that is advanced by the Commission and amicus and that was adopted

8

by the district court. See Universal Service , 63 Fed. Reg. at 2,117 ¶ 144.

According to the Supreme Court's opinion in Chevron U.S.A., Inc. v. NRDC, Inc. , 467 U.S. 837, 842-45 (1984), we are confronted with two questions when we review an agency's construction of a statute. See id. at 842. The first is "whether Congress has directly spoken to the precise question at issue." Id. If so, then the court must ensure that the agency has given effect to Congress's unambiguously expressed intent. See id. at 842-43. Congress was silent as to how §§ 254(f) and 332(c)(A)(3) should be read in relation to each other, and, therefore, Congress's intent is ambiguous. Thus, we answer the first question in the negative and turn to the second part of Chevron 's analysis.

The second question under Chevron is whether the agency, in interpreting a statute which is silent or ambiguous as to the issue presented, has based its interpretation on a "permissible construction of the statute." Id. at 843. We are required to give "controlling weight" to agency rules promulgated under an express Congressional delegation of rule-making authority unless such rules are "arbitrary, capricious, or manifestly contrary to the statute." Id. at 843-44. The FCC's rules concerning state KUSF contributions under § 254(f) were promulgated pursuant to an express Congressional delegation of rule-making authority. See § 254. Therefore, unless the FCC's rules are "arbitrary, capricious, or manifestly contrary to the statute," the wireless providers cannot

9

show a substantial likelihood of success on the merits of their preemption claim.

The FCC's conclusion that § 332(c)(3)(A) does not preempt states from requiring wireless provider USF contributions is not arbitrary, capricious, or manifestly contrary to the statutes at issue. Section 254(f) specifically grants states the authority to require contributions for universal service and mandates that the contributions come from all telecommunications carriers. In fact, according to the mandatory language of § 254(f) ("Every telecommunications carrier . . . shall contribute . . . ."), the Commission would apparently be in violation of federal law if it established a universal service fund but did not require contributions from wireless providers.

Additionally, read in its entirety, the second sentence of § 332(c)(3)(A) is limited in scope to that subparagraph and, thus, does not limit and is not affected by § 254(f). The second sentence of § 332(c)(3)(A) reads:

> <u>Nothing in this subparagraph</u> shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates.

§ 332(c)(3)(A) (emphasis added). The emphasized introductory language limits the parenthetical language's reach to § 332(c)(3)(A), so that the only time a state must show that wireless services are a substitute for land line service is when a

10

state wants to regulate rate and entry under § 332(c)(3)(A). Because § 332(c)(3)(A)'s second sentence provides an exception only within that subparagraph, it simply is not relevant to § 254(f). And because § 254(f) is not a rate or entry regulation, it neither applies to nor implicitly contradicts or modifies § 332(c)(3)(A) in contravention the 1996 Act's prohibition on implied modification of federal law.

Section 253(e) is similarly limited by its plain language, despite the expansive reading urged by the wireless providers. Section 253(e) states that "[n]othing  in this section  shall affect the application of section 332(c)(3) of this title to commercial mobile service providers." § 253(e) (emphasis added). Section 254 is, by definition, not in § 253. Therefore, § 253(e)'s restraints do not apply to § 254.

In short, the FCC's rules finding that § 254(f) does not conflict with § 332(c)(3)(A) and allowing states to require that wireless providers contribute to USFs are not "arbitrary, capricious, or manifestly contrary to the statute," Chevron , 467 U.S. at 844. Therefore, we give the FCC's rules controlling weight. See id. Under that weight, the wireless providers' arguments cannot stand. The district court's ruling that the wireless providers did not show a substantial likelihood of success on the merits is in accord with the FCC's rules and is not an abuse of discretion.

11

## IV.   CONCLUSION

For the aforementioned reasons, we affirm the district court's denial of the wireless providers' requested preliminary injunction.