[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is an appeal of a final decision by the defendant, Department of Public Utility Control ("DPUC"). The plaintiff is Bell Atlantic Mobile, Inc. ("BAM"), a provider of commercial mobile radio services ("CMRS"). This administrative appeal is authorized pursuant to General Statutes § 16-35 and the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§ 4-166 et seq. and 4-183. The underlying final decision in DPUC Docket No. 97-07-12 entitled "DPUC Review of the Connecticut Lifeline Program" was issued March 25, 1998. The decision assessed a share of the cost of the Connecticut Lifeline Program.[1]
The plaintiff filed a timely appeal on May 8, 1998. The answer and record were filed on August 21, 1998. Briefs were filed by the plaintiff on September 25, 1998 and the defendant on November 2, 1998. Springwich Cellular Limited Partnership, Connecticut Telephone, Southern New England Telephone Company and the Office of Consumer Council participated in the underlying agency proceedings, but not in the present case. The parties were heard in oral argument on January 20, 1999.
In that BAM is required to economically contribute to the Lifeline Program, it is aggrieved by the DPUC decision. See General Statutes § 4-183; Light Rigging Co. v. Department ofPublic Utility Control, 219 Conn. 168 (1991).
The plaintiff raises and briefs essentially three issues: (1) that DPUC is precluded from imposing Lifeline assessments on CMRS providers by federal law; (2) that the Connecticut Lifeline Statute, General Statutes § 16-247e, has an inequitable discriminating and unlawful effect on cellular carriers and (3) that the Connecticut Lifeline Statute, § 16-247e, violates the separation of powers provision of article second of the constitution of Connecticut. The court finds the issues for the defendant DPUC.
The plaintiff's federal law challenge has several components. Claims arising under the Communication Act of 1934, 47 U.S.C. § 151
CT Page 2871 et seq. as amended in 1993[2] and 1996[3] and the preemption doctrine.
The plaintiff's preemption claim is not that Congress has indicated an intent to occupy the entire field of telecommunications regulations. The express language of the Communications Act of 1934, 47 U.S.C. § 152(b)(2)(b) preserves state authority over intrastate telecommunications. The plaintiff recognized the shared or split federal and state authority over telecommunications. The argument is the more subtle claim that a state law even in an area of shared jurisdiction, may be preempted if it opposes the Congressional intent. California Federal Savings and Loan Assoc. v. Guerra,479 U.S. 272 (1987); Frazier v. Marine Midland Bank, N.A.,702 F. Sup. 1000 (W.D.N.Y. 1988), Westmarc Com. v. Conn. Dept. of PublicUtility, 807 F. Sup. 876 (D. Conn. 1990).
The plaintiff asserts that the purpose of the 1996 Telecommunications Act in creating competitive local telephone markets is frustrated by imposing universal service funding requirements on cellular providers. This claim fails on the facts and law. The 1996 Telecommunications Act specifically requires states to establish universal service for intrastate telecommunications. 47 U.S.C. § 254(f).[4]
That the specifically authorized universal service obligation of all telecommunication providers would be preempted by a general intent to promote competition is not a compelling claim. The plaintiff has also failed to demonstrate factually how the universal service obligation applicable to all telecommunication providers serves to competitively disadvantage CMRS providers more than anyone else. The funding is by General Statute § 16-247e(a) on total gross interstate and interstate revenues generated in Connecticut. See Bell Atlantic v. DPUC, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 572450 (July 8, 1998, DiPentima, J.) (where this claim by the same plaintiff was rejected with respect to universal funding requirements for telecommunicates relay services for telephone communications for the hearing impaired and deaf.)
The plaintiff's statutory federal law claim is based on the 1993 Budget Act amendment which provides:
(c) Regulatory treatment of mobile services CT Page 2872
(3) State preemption
 (A) Notwithstanding sections 152(b) and 221(b) of this title, no state or local government shall have any authority to regulate the entry of or the rates charged by an commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a state from regulating the other terms and conditions of commercial mobile services. Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a state commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates. Notwithstanding the first sentence of this subparagraph, a State may petition the Commission for authority to regulate the rates for any commercial mobile service and the Commission shall grant such petition if such state demonstrates that —
 (i) market conditions with respect to such services fail to protect subscribers adequately from unjust and unreasonable rates or rates that are unjustly or unreasonably discriminatory; or (ii) such market conditions exist and such service is a replacement for land line telephone exchange service for a substantial portion of the telephone land line exchange service within such state.
 The Commission shall provide reasonable opportunity for public comment in response to such petition, and shall, within 9 months after the date of its submission, grant or deny such petition. If the Commission grants such petition, the Commission shall authorize the State to exercise under State law such authority over rates, for such periods of time, as the Commission deems necessary to ensure that such rates are just and reasonable and not unjustly or unreasonably discriminatory.
 47 U.S.C. § 332(c)(3)(A).
The plaintiff reads the second sentence of such provision to CT Page 2873 set forth the only condition under which a state can require wireless providers to contribute to a universal service fund. A finding that the wireless service is a substitute for land line service for a substantial portion of the state.
The plaintiff argues that this limitation was not overruled by the Telecommunications Act of 1996, including § 254(f), because the 1996 amendment only allows for express modifications of earlier federal statutes[5] and § 254(f) contains no such express modification.
The weight of state and federal authority rejects such construction of the Telecommunications Act. Nearly simultaneous with Judge DiPentima's decision rejecting the plaintiff's identical claim, the Tenth Circuit Court of Appeals allowed a Kansas universal service plan to compel contributions from wireless telecommunications providers. Sprint Spectrum v. StateCorp. Com'n of Kansas, 149 F.3d 1058 (10th Cir. 1998). The Tenth Circuit decision adopts as did the DPUC, the construction given the Telecommunication Act by the Federal Communications Commission.
 The Federal Communications Commission ("FCC") recently entered the fray when it adopted rules allowing states to require universal service fund contributions from wireless providers. See generally 47 C.F.R. § 36, 54, 69 (1997). The FCC's Report and Orders promulgating these rules considered and rejected the wireless providers' claim that state USF contribution requirements established pursuant to § 254(f) conflict with § 332(c)(3)(A). See Universal Service, 63 Fed. Reg. 2,094, 2,117 ¶ 144 (1998) (citing In re J. Petition of Pittencrieff Communications, Inc., 9 Communications Reg. (P F) 1041, 1997 WL 606233
(Fed. Communications Comm'n Oct. 2, 1997); Universal Service, 62 Fed. Reg. 32,862, 32,926 ¶ 453 (1997). The FCC followed the interpretation of the statutes that is advanced by the Commission and amicus and that was adopted by the district court. See Universal Service, 63 Fed. Reg. at 2,177 ¶ 144.
 Sprint Spectrum v. State Corp. Com'n of Kansas, supra, 149 F.3d 1061.
The sole authority which plaintiff cites for its statutory CT Page 2874 construction is Metro Mobile CTS v. DPUC, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 512758 (December 9, 1996, Levine, J.) The Metro Mobile decision did not have the benefit of the FCC construction[6] of the Telecommunications Act and the federal authority construing these issues of federal law.
The plaintiff's federal law claims are not aided by the recent United States Supreme Court decisions applying the Telecommunications Act of 1996. ATT Corp. v. Iowa UtilitiesBoard, Nos. 97-826, 97-829, 97-830, 97-831, 97-1075, 97-1087, 97-1099, and 97-1141 (U.S. Jan. 25, 1999). The ATT case involved challenges by state Public Utilities Commission and local exchange carriers to FCC jurisdiction. In upholding FCC jurisdiction, the United States Supreme Court specifically noted the express Congressional direction that the 1996 Act be inserted into the Communications Act of 1934, 1996 Act § 1(b),110 stat. 5b. The FCC jurisdiction thus followed from its rulemaking authority in 47 U.S.C. § 201(b). Footnote 10 of such decision explicitly recognizes the role of state commissions in telecommunications law.
The plaintiff fails to support his discrimination claim with any reference to the record, which would demonstrate the inequitable impact on CMRS providers.
The taxation claim also fails as the FCC Universal order and § 16-247e(a) clearly establish that the universal service funding is not a tax. The DPUC decision irrefutably establishes that the funding in fact pays for the service for low income persons.
The plaintiff's final argument relates to the claim of a violation of the separation of powers provision of article second
of the constitution of Connecticut.
The Connecticut Supreme Court has repeatedly held: "Recognizing that executive, legislative and judicial powers frequently overlap, we have consistently held that the doctrine of the separation of powers cannot be applied rigidly." (Citations omitted.) Bartholomew v. Schweizer, 217 Conn. 671, 676
(1991); University of Connecticut Chapter, AAUP v. Governor,200 Conn. 386, 394 (1986); Adams v. Rubinow, 157 Conn. 150, 155
(1968); In re Application of Clark, 65 Conn. 17, 38 (1894). "As CT Page 2875 we have recognized, the great functions of government are not divided in any such way that all acts of the nature of the function of one department can never be exercised by another department; such a division is impracticable, and if carried out would result in the paralysis of government." (Internal quotation marks omitted.) Massameno v. Statewide Grievance Committee,234 Conn. 539, 552 (1995).
Thus, directing the DPUC to assess universal service funding in accordance with § 16-247e[7] raises no separation of powers issue.
The decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.